STATE of Minnesota, Respondent,

v.

Craig Thomas SEIFERT, Appellant.

No. C1–87–452.

Supreme Court of Minnesota.

April 29, 1988.

Steven H. Goldberg, St. Louis Park, for appellant.

Craig Thomas Seifert, pro se.

Hubert H. Humphrey, III, State Atty. Gen., Thomas Foley, Ramsey Co. Atty., St. Paul, for respondent.

C. Paul Jones, J. Christopher Cuneo, Minneapolis, amicus for MN State Public Defender.

Mark Nathan Liptig, Asst. Dakota Co. Atty., Hastings, amicus for MN Co. Atty's Ass'n.

Lucinda E. Jesson, Julie A. Oseid, Minneapolis, amicus for MN Civil Liberties Union.

AMDAHL, Chief Justice.

The issues presented by this appeal are whether an indigent criminal defendant may waive counsel on direct appeal and proceed *pro se;* and if so, whether he has a right of access to the trial transcript to assist him in preparing his brief. We hold that he may so waive under current Minnesota law and may have access to the transcript.

Appellant Craig Thomas Seifert, who is eligible for public defender representation, wants to proceed *pro se* in two appeals from felony convictions and have access to the trial transcripts of the underlying cases to assist him in the appeals. He claims that the assertion of the State Public Defender's Office (SPDO) that it must represent him in the appeals and that he is not entitled to the transcript is without merit.

Seifert construes Minnesota Statutes Section 611.25 (1986) and Rule 28.02, subdivision 5 of the Minnesota Rules of Criminal Procedure to grant him this right. Alternatively, he argues that principles of due process and equal protection dictate that he be allowed to proceed *pro se* and have access to the transcripts.

The SPDO asserts that it must represent Seifert on appeal and that it, and not Seifert, should have access to the transcripts.[1] It argues that the statute and rule dictate this result and that no constitutional principle mandates a contrary ruling.

We agree with Seifert that the current statute and rule authorize him to proceed *pro se* on direct appeal and have access to the trial transcripts. Consequently, we need not reach the constitutional questions raised.

Seifert was convicted of two separate felony offenses. After each conviction, he took steps to perfect a *pro se* appeal and to receive a copy of the trial transcripts at state expense. In each case the SPDO, in accord with its usual practice, filed notices of appeal and requests for transcripts on Seifert's behalf.

Seifert objected to the actions of the SPDO and attempted to dismiss the SPDO as counsel. He filed *pro se* motions with the court of appeals to enjoin the SPDO from acting on his behalf and to obtain the trial transcripts. These motions were denied. Seifert then filed a *pro se* petition for accelerated review with this court. The petition was granted and we appointed counsel to represent Seifert for the express purpose of arguing the self-representation and transcript issues.

The basic dispute in this case arises out of the SPDO's interpretation of the statute and rule authorizing it to represent indigent criminal defendants. Section 611.25 states, in relevant part:

> The state public defender shall represent, without charge, a defendant or other person appealing from a conviction or pursuing a post conviction proceeding after the time for appeal has expired when the state public defender is directed to do so by a judge of the district court, of the court of appeals or of the supreme court.

Minn.Stat. § 611.25 (1986). Similarly, Rule 28.02, subdivision 5, which sets up the procedure by which an indigent criminal defendant may obtain appellate counsel on appeal, states, in relevant part:

> (1) An indigent defendant wishing the service of an attorney in an appeal or postconviction case shall make applica-

---

1. At oral argument, the SPDO stated that disagreement sometimes exists between it and its clients in how best to prosecute appeals. In those cases, the SPDO has allowed its clients to file what it terms "Supplemental *pro se* briefs," raising issues not covered by the main brief prepared by the SPDO. In such cases, the SPDO forwards a copy of its brief to the defendant for his use in preparing the supplemental brief. However, the SPDO's policy is to not turn the transcript over to the defendant. The SPDO asserts that this system gives the defendant the best of both worlds as it allows him both personal and professional advocacy.

tion therefore to the office of the Public Defender, * * *.

*　　*　　*　　*　　*　　*

(5) The State Public Defender's office shall determine if the applicant is financially and otherwise eligible for representation. If the applicant is so eligible then the State Public Defender shall represent him regarding a judicial review or an evaluation of the merits of a judicial review of his case in a felony case * * *.

(6) All requests for transcripts necessary for judicial review or efforts to have cases reviewed in which the defendant is not represented by an attorney shall be referred by the court receiving the same to the office of the State Public Defender for processing as in paragraphs (2) through (5) above.

*　　*　　*　　*　　*　　*

(9) Unless otherwise specifically provided by Supreme Court order, the State Public Defender's office shall be appointed to represent all eligible indigent defendants in all appeal or postconviction cases as provided above, regardless of which county in the state is the county in which the defendant was accused.

*　　*　　*　　*　　*　　*

(11) The cost of transcripts and other necessary expenses in all indigent appeal cases shall likewise be paid from funds available to the State Public Defender's office when the county in which the defendant was accused is within a judicial district which has a District Public Defender, including Ramsey and Hennepin Counties, if approved by the State Public Defender.

■ A fair reading of the statute and rule is that the SPDO may not refuse to represent an indigent defendant on appeal who applies for such representation. It does not, however, require that such a defendant must accept representation if he wishes to go it alone.[2]

Keeping in mind the Canons of statutory construction and statutory presumptions, we conclude that *pro se* indigent direct appeals are authorized. *See* Minn.Stat. § 645.16, 645.17 (1986). The right to proceed *pro se* is also implicitly recognized by Section 481.02, subdivision 1, which prohibits the unauthorized practice of law. This section prohibits any nonlawyer from appearing in any proceeding "except personally as a party thereto in other than a representative capacity." *Cf. State v. Townley,* 149 Minn. 5, 182 N.W. 773 (1921) (predecessor statute construed). Furthermore, Section 611.14 bolsters our belief that *pro se* appeals are statutorily authorized. This statute enumerates what classes of persons are *"entitled* to be represented by a public defender." *Id.* (emphasis added). It does not say that these persons must accept such representation, only that they are entitled to it.

Lastly, Rule 28.02, subdivision 5, in its present form, does not unambiguously demand SPDO representation of indigent defendants when the defendant wants to proceed *pro se.* In fact, the language of the rule hints at an opposite result. Paragraph 1 of Rule 28.02, subdivision 5, contemplates just such a result when it states: "An indigent defendant *wishing the service of an attorney on appeal * * * shall make application * * *."* (emphasis added). If an indigent defendant must be represented by the SPDO, as argued, then this is cer-

---

2. Prior to 1983 when the Rules of Criminal Procedure were amended to accommodate the creation of the court of appeals, *pro se* appeals were expressly authorized. The predecessor to Rule 28.02, subd. 5, was found at Rule 29.02, subd. 7. The former rule was essentially the same except that the last sentence of paragraph 6 was deleted. Paragraph 6 previously read as follows:

　All requests for transcripts or efforts to have cases reviewed in which the defendant is not represented by an attorney shall be referred by the court receiving the same to the

office of the State Public Defender for processing. *Any applicant who then wishes to proceed without an attorney representing him shall advise the court and the State Public Defender's office in writing that he waives any right he may have to the services of the State Public Defender's office.*

(emphasis added).

We do not believe this deletion changes the result, as Section 611.25 and the other operative sections in the rule have not been changed to eliminate the right to appeal *pro se.*

tainly an odd choice of words. Furthermore, paragraph six states that "all requests for transcripts * * * *in which the defendant is not represented by an attorney* shall be referred" to the SPDO for processing. (emphasis added). The language clearly contemplates situations involving *pro se* appeals. This paragraph seems to merely require processing the transcript request through the SPDO without regard to whether actual representation will result.

The SPDO points to the "shall represent" language of the Rule and statute to forbid self-representation. However, Section 611.25 is not unambiguous in its application to the present issue. In fact, prior to 1983, *pro se* indigent appeals were expressly authorized by Rule while this statute was unchanged. Consequently, it cannot be said that the statute unambiguously mandates the result sought by the SPDO. Indeed, Section 611.25 plainly stands for the contrary proposition. This section only authorizes SPDO representation when "directed to do so by a judge." If not so directed, the SPDO is not authorized. Prior to 1983, the Rules required specific appointment by this court. *See* Minn.R. Crim.P. 29.02, subd. 7(5) (1982). Now appointment is automatic in all cases where application by the defendant is made. Minn.R.Crim.P. 28.02, subd. 5(5).

We do not read this deletion of the express authorization language as mandating reversal of the policy of permitting *pro se* representation on direct appeal. Rather, the 1983 amendments were enacted primarily to accommodate the court of appeals and to remove this court from the process of making the preliminary finding of indigency. They were not intended to change substantive rights. The fact that the SPDO is now automatically appointed when application is made does not change the fact that exceptions are allowed, as this case. Consequently, we hold that Seifert may proceed *pro se* on his direct appeal.[3]

■ Since Seifert has the right of self-representation on appeal, he must be given a copy of his trial transcripts to assist him in his preparations. *See Mayer v. City of Chicago,* 404 U.S. 189, 92 S.Ct. 410, 30 L.Ed.2d 372 (1971); *see also Byrd v. Wainwright,* 722 F.2d 716, 718 (11th Cir.), *cert. denied,* 469 U.S. 869, 105 S.Ct. 217, 83 L.Ed.2d 147 (1984) (transcript needed for *pro se* representation). This is nothing more than a concrete example of the rationale that "[d]estitute defendants must be afforded as adequate appellate review as defendants who have money enough to buy transcripts." *Griffin v. Illinois,* 351 U.S. 12, 19, 76 S.Ct. 585, 591, 100 L.Ed. 891, *reh'g denied,* 351 U.S. 958, 76 S.Ct. 844, 100 L.Ed. 1480 (1956).

■ Our state law allows no less. Paragraph 6 of Rule 28.02, subdivision 5, gives Seifert this right. The SPDO will order the transcripts[4] and make one copy available to the defendant. The defendant shall sign a receipt for the transcript, including an agreement not to make the transcript available to other persons not attorneys of record in the appellate proceeding, and acknowledging that the defendant has no

---

**3.** Because this is the first time this court has considered the issue of *pro se* representation in a direct appeal by a convicted offender and its related issue of the provision of transcripts to such *pro se,* we anticipate that practical problems will arise in the procedures to be followed in such cases. We request that the Supreme Court Advisory Committee on Rules of Criminal Procedure take up the matter and draft rules for recommendation to this court for adoption. It must also be noted that the present Rules of Criminal Procedure provide the basis for our opinion here. If the Committee determines that the conclusions we have reached in interpreting the existing Rules is not in accord with the intention of the Committee in its original and amendatory drafting of the rules, it may recom-

mend redrafted rules to more clearly express its intention.

**4.** We note that four copies of the trial transcript are generally prepared for appeal. *See* Minn.R. Crim.P. 28.02, subd. 9. This Rule incorporates the Minnesota Rules of Civil Appellate Procedure concerning transcripts. Rule 110.02, subdivision 4 of the Appellate Rules provides that the original and first copy of the transcript are sent to the clerk of the trial court, while a copy is sent to the attorney for each party. One copy is normally given to the SPDO and one copy to the prosecutor. In this case, the copy normally retained by the SPDO will be provided to Seifert.

more than 60 days to prepare, file and serve the appeal brief. The transcript is available to the defendant for his use while preparing his *pro se* brief. Upon completion of the *pro se* brief, the transcript must be returned to the SPDO and that office will provide the defendant with a signed receipt.[5] That receipt must be provided to the Office of the Appellate Courts as a prerequisite to acceptance of the defendant's brief.

These safeguards will greatly lessen the possibility of lost, destroyed or stolen transcripts. A system similar to this was used and constitutionally approved in *Lumbert v. Finley*, 735 F.2d 239, 246 (7th Cir.1984) (applying Illinois state rule).

■ What we have done today is merely give Seifert the right to represent himself and have use of a transcript. However, Seifert may not reject the SPDO in favor of another attorney retained at public expense. While an indigent criminal defendant has the right to counsel, he does not have a constitutional right to choose who his counsel will be. *State v. Vance*, 254 N.W.2d 353, 358 (Minn.1977); *see State v. Nace*, 404 N.W.2d 357, 362 (Minn.App. 1987). Seifert must choose to either accept the SPDO or go it alone and take the consequences of his decision. The law requires no more.

■ A defendant who elects to represent himself must still comply with all procedural rules. The rules of procedure apply the same to all litigants whether represented by counsel or not. No extra benefits will be given to *pro se* litigants. *See State v. Alowonle*, 356 N.W.2d 385, 387 (Minn.App. 1984). As stated by one court:

> The right of self-representation is not a license to capriciously upset the appellate timetable or to thwart the orderly and fair administration of justice.

*Webb v. State*, 533 S.W.2d 780, 786 (Tex.Cr. App.1976). The implication of this is that the *pro se* defendant will be held to the standard of an attorney in presenting his appeal.

Lastly, and most significantly, refusal to accept counsel on direct appeal will have impacts that the typical defendant might not foresee. For example, an incarcerated defendant will not be provided an opportunity for oral argument. A more serious impact arises from *Bounds v. Smith*, 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977), where the United States Supreme Court held that a state must provide prisoners with the means to vindicate their rights. The state can accomplish this either by providing counsel for discretionary appeals *or* by providing an adequate law library. *Id.* at 828, 97 S.Ct. at 1498. The state has the option of deciding which of these the defendant gets. Minnesota has opted to provide counsel.

*Bounds* has a significant impact on the right of self representation. In *United States ex rel. George v. Lane*, 718 F.2d 226, 231 (7th Cir.1983), the court held that a defendant who refuses appointed counsel at the pretrial stages does *not* have a right to a law library or other materials. *Accord United States v. Wilson*, 690 F.2d 1267, 1271 (9th Cir.1982), *cert. denied*, 464 U.S. 867, 104 S.Ct. 205, 78 L.Ed.2d 178 (1983), *reh'g denied*, 467 U.S. 1211, 104 S.Ct. 2402, 81 L.Ed.2d 358 (1984). Most significantly, in *Bell v. Hopper*, 511 F.Supp. 452, 453 (S.D.Ga.1981), the court applied the same rule to a self representation appeal. The court reasoned:

> A criminal defendant certainly has a right, correlative with his right to assistance of counsel, to dispense with counsel, and conduct his defense *in propria persona*. Having asserted this right, however, does a defendant in the lawful custody of the state then have the right to demand and receive for his use a fifteen thousand dollar law library? This Court opines that he does not.

---

5. We believe such a requirement is permissible since the transcript is still state property. The defendant has no right to keep it indefinitely. The risk of theft or loss is on the defendant while the transcript is in his possession. No additional copies or time extensions will be provided to defendants who claim loss or theft. If a transcript or a portion thereof is inadvertently lost or destroyed, a motion shall be filed requesting permission to file the brief.

Plaintiff could reason, no doubt, that the lack of access to a proper library renders empty his choice to proceed *pro se,* and thereby effectively denies him the right to make that choice. This logic has a certain appeal, granted, but the law does not support it to the degree plaintiff needs. A trial court cannot deny a defendant the freedom to choose to represent himself so long as he is competent to make the choice; this is so even if he obviously lacks the skill and knowledge necessary to present a good defense, and even if it seems that the choice would foreclose the likelihood of success. A defendant's " * * * technical legal knowledge, as such, [is] not relevant to an assessment of his knowing exercise of the right to defend himself." *Faretta v. California, supra,* 422 U.S. [806] at 836, 95 S.Ct. [2525] at 2541 [45 L.Ed.2d 562 (1975)]. A necessary corollary to this doctrine, however, is that the defendant who makes this choice must abide by the consequences of this choice. That is, if a defendant makes his bed, he must sleep in it.

The defendants in the cases just cited were required to accept the hard reality of their own ignorance of the law and court procedure as part and parcel of their choice to defend themselves. Here, the Court believes this plaintiff must accept the hard reality of his own conscious choice: that the prison did not have an adequate law library, and could not reasonably be expected to get one in the time it would take to process an appeal.

*Id.* (citations omitted); *accord Kelsey v. State of Minnesota,* 622 F.2d 956, 958 (8th Cir.1980) (access to the courts may be given through supplying legal help *or* a law library).

We find the reasoning in *Bell* persuasive. The defendant may not have it both ways. He must either accept appointed appellate counsel or proceed *pro se* at his own risk, which, we might add, is considerable. If he

makes that choice, the defendant must proceed with whatever limited resources are on hand.

Additionally, we note that each request to proceed *pro se* on direct appeal must be viewed in light of its own circumstances. Since Seifert has the right to counsel on direct appeal, he may not be deprived of that right unless he makes a valid waiver. That waiver must be knowing, voluntary and intelligent. We direct that the indigent defendant must confer with the SPDO as is required under the system currently in place. If, at that time, the defendant insists on proceeding *pro se,* the SPDO should secure a detailed, written and signed waiver after consultation.[6] In the consultation, the SPDO must determine the defendant's wishes, and should inquire for his reasons for preferring self-representation. Thereafter, the SPDO must advise a defendant concerning the consequences and ramifications of his choice. The advice given to the defendant should include, among other pertinent information and answers to the defendant's inquiries, advising the defendant of the logistic difficulties of appealing while the defendant is incarcerated, that if he proceeds *pro se,* that he must comply with all the procedural rules and that he will be held to the same standard as an attorney, that his access to materials might be very limited because of his incarceration and that all existing legal issues must be raised in the appeal or the issues are waived under both state and federal law. While most of the items about which advice is given could be listed in a general form, additional specific items not listed should be put in writing as part of an addendum to the form. The defendant shall acknowledge in writing that he has read the lists and received advice on the noted items. A copy of the document shall be provided to the SPDO and to the defendant. After this consultation, if the defendant still wishes to waive counsel, he may do so. If the SPDO believes, after the consul-

---

6. We request that the Supreme Court Advisory Committee on Criminal Procedure draft a detailed and thorough waiver which shall be executed by defendant. The committee should also consider amending Rule 28.02, subdivision 5 to expressly accommodate the issues raised. Specifically, the committee should consider and solicit input on how best to effectuate the defendants' access to transcripts.

tation, that the defendant is not competent to waive counsel,[7] it should seek an order from the district court determining the competency or incompetency of the defendant.[8]

Once a defendant has properly waived SPDO representation on appeal, he must be left to his own devices. If the SPDO determines that a particular case presents any issue of broad interest and significant scope, it may file for amicus status in order to present its views on these issues. We expect, however, that the need to do so will arise only in those rare cases when novel or constitutional issues are involved. If amicus status is granted and the SPDO determines that it needs a transcript in order to brief the issues, it will need to obtain an additional copy of the transcript and pay for it out of its own operating budget.

We conclude by noting that a criminal defendant who elects to appeal *pro se* will very likely harm rather than help his chances for success. However, while our state law allows him to do so, he must live with the consequences of so doing.

Reversed.

WAHL and SIMONETT, JJ., dissenting.

POPOVICH, J., took no part in the consideration or decision of this case.

WAHL, Justice (dissenting).

I respectfully dissent.

I do not believe that the existing court rules and applicable statutes contemplate allowing a defendant to represent himself on an appeal from his criminal conviction and, in the case of an indigent, allowing him access to a transcript prepared at public expense for such a purpose nor do I believe such a result is constitutionally mandated. For these reasons, I would retain the existing procedures for vindicating indigent defendants' rights to seek review of their criminal convictions. Alternatively, since there is apparently no legislative prohibition of *pro se* appeals at public expense, rather than find that this defendant has been denied any existing right to proceed *pro se*, I would suspend the rules in the defendant Seifert's case to allow him to proceed with his appeal *pro se* and handle further requests on a case by case basis. I would also refer the matter to the Advisory Committee on rules of Criminal Procedure for further study.

I must state at the outset that I am disturbed at the inescapable implication in the majority opinion that the current practice of the State Public Defender is in violation of existing state law. The State Public Defender has done nothing but what he was required to do under statute and court rule. The express legislative and judicial policy of this State, at least up until this point, could not be more clear. Minn.Stat. § 611.25 provides in relevant part:

The state public defender *shall represent*, without charge, a defendant or other person appealing from a conviction or pursuing a post conviction proceeding after the time for filing an appeal has expired when the state public defender is directed to do so by a judge of the district court, of the court of appeals or of the supreme court * * * * (emphasis added).

Minn.R.Crim.P. 28.02, subd. 5(5) provides in relevant part:

If [an indigent defendant seeking review of his conviction] is [financially] eligible then the State Public Defender *shall represent* him * * * * and the State Public Defender is automatically appointed for that purpose without order of the court. (emphasis added).

This language clearly and unambiguously requires the State Public Defender to represent indigent persons seeking review of

---

7. Competency to waive counsel does not address whether the waiver is wise. The defendant may be totally unprepared to handle the intricacies of the appellate process. However, that is a choice the competent defendant will have made after consultation. Once that choice is made, he must live with its consequences.

8. We note that in most cases defendant will have recently been involved in a trial setting so that the issue of his competency to assist in his defense will have been determined if questioned there or prior to that trial.

their criminal convictions. Resort to any canons of construction is unnecessary.[1] Moreover, the history of these provisions does not necessarily lead to the conclusion that these provisions mean anything other than what they say. The only reference to a potential right of self-representation in the prior version of Rule 28.02, subd. 5 [then codified as Rule 29.02, subd. 7.6] was deleted from the current rule.

As to whether there is any constitutional right of self-representation on appeal, I would conclude that there is no such mandate. In *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), the United States Supreme Court ruled that an individual has a right, under the Sixth Amendment as applied to the States under the Due Process clause of the Fourteenth Amendment, to represent himself at trial. Yet nothing in *Faretta* indicates that the right to proceed *pro se* at trial extends to a right to proceed *pro se* on appeal. Not only does the absence of language indicating such a right exists imply that it does not exist, but this conclusion can be otherwise inferred from the opinion and interpretations thereof. The *Faretta* holding is based in large part on a conclusion that the framers intended the right to proceed *pro se* at trial be implied in the Sixth Amendment. The Judiciary Act of 1789, passed one day before the Sixth Amendment was proposed, provided that parties to actions in federal courts "may plead and manage their own causes personally or by the assistance of * * * counsel * * *" *Id.* at 813, 95 S.Ct. at 2530. There is no corresponding legislation in Minnesota. *Id.* Of greater significance, there is no constitutional right of appeal. *Jones v. Barnes,* 463 U.S. 745, 751, 103 S.Ct. 3308, 3312, 77 L.Ed.2d 987 (1983); *Griffin v. Illinois,* 351 U.S. 12, 18, 76 S.Ct. 585, 590, 100 L.Ed. 891 (1956); *McKane v. Durston,* 153 U.S. 684, 14 S.Ct. 913, 38 L.Ed. 867 (1894). *Compare, Appeal of O'Rourke,* 300 Minn. 158, 220 N.W.2d 811 (1974). Thus, there is no his-

torical basis for concluding that a right to proceed *pro se* on appeal was intended by the framers of the Constitution.

The distinction between the situation of an accused at trial and that of an appellant challenging a conviction has significance beyond the historical analysis of the Sixth Amendment. Since there exists no independent constitutional right to appeal, the constitutional rights guaranteed to indigent criminal appellants are grounded primarily in equal protection considerations. The Sixth Amendment considerations discussed in *Faretta* in the context of a criminal trial cannot be easily applied to a criminal appeal:

> At the trial stage of a criminal proceeding, the right of an indigent defendant to counsel is fundamental and binding upon the States by virtue of the Sixth and Fourteenth Amendments. *Gideon v. Wainwright,* 372 U.S. 335 [83 S.Ct. 792, 9 L.Ed.2d 799] (1963). But there are significant differences between the trial and appellate stages of a criminal proceeding. The purpose of the trial stage from the State's point of view is to convert a criminal defendant from a person presumed innocent to one found guilty beyond a reasonable doubt. To accomplish this purpose, the State employs a prosecuting attorney who presents evidence to the court, challenges any witnesses offered by the defendant, argues rulings of the court, and makes direct arguments to the court and jury seeking to persuade them of the defendant's guilt. Under these circumstances "reason and reflection require us to recognize that in our adversary system of criminal justice, any person haled into court, who is too poor to hire a lawyer, cannot be assured a fair trial unless counsel is provided for him." *Id.* at 344 [83 S.Ct. at 796].

---

1. The majority opinion contains language at footnote 3 which invites the Advisory Committee on Rules of Criminal Procedure to redraft the rules if the majority's interpretation is not in accord with the Committee's intent. While the Committee might be pleased to find it has the power to legislatively overrule this court, this is not the case. While the Criminal Rules were proposed by the Advisory Committee, they were promulgated by this Court and it is this Court's responsibility to interpret them.

By contrast, it is ordinarily the defendant, rather than the State, who initiates the appellate process, seeking not to fend off the efforts of the State's prosecutor but rather to overturn a finding of guilty made by a judge or jury below. The defendant needs an attorney on appeal not as a shield to protect him against being "haled into court" by the State and stripped of his presumption of innocence, but rather as a sword to upset the prior determination of guilt. This difference is significant for, while no one would agree that the State may simply dispense with the trial stage of proceedings without a criminal defendant's consent, it is clear that the State need not provide any appeal at all. *McKane v. Durston,* 153 U.S. 684 [14 S.Ct. 913, 38 L.Ed. 867] (1894). The fact that an appeal *has* been provided does not automatically mean that a State then acts unfairly by refusing to provide counsel to indigent defendants at every stage of the way. *Douglas v. California* [372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963)], *supra.* Unfairness results only if indigents are singled out by the State and denied meaningful access to the appellate system because of their poverty. That question is more profitably considered under an equal protection analysis.

*Ross v. Moffitt,* 417 U.S. 600, 610–611, 94 S.Ct. 2437, 2443–2444, 41 L.Ed.2d 341 (1974). *Compare Price v. Johnston,* 334 U.S. 266, 285, 68 S.Ct. 1049, 1060, 92 L.Ed. 1356 (1948) (no absolute right to be present at appellate proceedings, in contrast to constitutional prerogative of being present at each significant stage of a felony prosecution).

Two Federal Courts of Appeals have concluded that there is no constitutional right of self-representation on appeal. In *United States v. Gillis,* 773 F.2d 549 (4th Cir. 1985), the court rejected a defendant's motion to handle his appeal on a *pro se* basis. In explaining the distinction from a trial where a defendant's right of self-representation is clear, the court stated:

In constitutional analysis, however, the rights to counsel and self-representation *on appeal* (emphasis in original) stand on a different ground. Unlike the right to trial, which is also guaranteed by the Sixth Amendment, there is no constitutional right to an appeal. [citation omitted] Rather, where the right to appeal a criminal conviction exists, it exists only by statute. [citation omitted] Once the right to appeal is granted, however, the Equal Protection and Due Process Clauses command that an indigent defendant has a right to appointed counsel [citation omitted] and access to the courts. [citations omitted]

Although a convicted defendant has a right to counsel on appeal, his implicit Sixth Amendment right to represent himself at trial does not carry over to the appeal.

*United States. v. Gilles,* 773 F.2d at 559–560.[2] In *Lumbert v. Finley,* 735 F.2d 239 (7th Cir.1984), the Seventh Circuit reached a similar conclusion, finding it:

conceptually difficult to imply in the "equal protection right" to counsel on direct appeal a correlative right of self-representation on direct appeal. And, although the due process principle of fundamental fairness requires that an indigent be provided with counsel on direct appeal, it provides no basis for finding a correlative right of self-representation on direct appeal.

*Id.* at 246.

The issue then comes down to whether, as a matter of policy, the existing procedures should be changed so that *pro se* appeals are permitted and the *pro se* defendant will have access to a transcript of the trial and other lower court proceedings prepared at public expense.

Under existing policy, the procedure that an indigent defendant must follow to seek review of his conviction is clear and it has

---

**2.** As Chief Justice Warren stated:

The ability to waive a constitutional right does not ordinarily carry with it the right to insist upon the opposite of that right.

*Singer v. United States,* 380 U.S. 24, 34–35, 85 S.Ct. 783, 789–790, 13 L.Ed.2d 630 (1965) (rule requiring government consent before a defendant can waive a jury trial held constitutional).

served the ends of justice well. When a defendant seeks review of his conviction, the State Public Defender is automatically appointed and handles the initial screening to determine in forma pauperis eligibility. Additionally, each defendant desiring review is interviewed by an attorney knowledgeable in criminal law and appellate procedure and is given an assessment as to the relative merits of his case. In cases where the defendant chooses to proceed, the State Public Defender assures that proper procedural notices are served and filed in a timely fashion, arranges for necessary transcripts to be prepared and purchased out of funds appropriated to the office for that purpose, and prepares a brief for the appellate court that comports with format requirements of the rules and is filed within the time constraints of those rules. Additionally, as history has shown over the 20 years that the State Public Defender's Office has represented indigent defendants, the briefs that we receive from that office are of the highest quality. The defendant receives a copy of his brief when it is filed as well as the prosecutor's brief when it is filed.[3] If he is dissatisfied, he has the opportunity to file a supplemental *pro se* brief to voice whatever additional concerns he may have.[4] To assure that the *pro se* brief comports with our rules, the State Public Defender takes responsibility for duplicating, binding, and serving these supplemental briefs. This is a system which I do not feel needs major alteration except

that I would prospectively allow the defendant limited access to a transcript for purposes of preparing the *pro se* supplemental brief. See *Eling v. Jones,* 797 F.2d 697 (8th Cir.1986), *cert. denied,* —— U.S. ——, 107 S.Ct. 1371, 94 L.Ed.2d 687 (1987).

If, however, it is the collective will of this court to change existing policy and procedure, then I believe the better course would be to simply suspend the rule requiring State Public Defender representation in the defendant Seifert's case. Minn.R.Crim.P. 29.01, subd. 3. I would then, as the majority proposes, invite the Advisory Committee on the Rules of Criminal Procedure to study the situation and draft appropriate rules if necessary.

Presumably under the majority opinion it would seem that anyone following the procedural steps of Seifert could proceed *pro se* and obtain whatever transcript he desired, all without regard to whether he was literate or illiterate and without a showing to some responsible authority that a particular transcript is necessary to raise a particular claim. Obviously, if the State Public Defender is no longer representing the defendant, that office is not in a position to ascertain what transcripts are necessary, nor can it fairly be asked to take responsibility for ascertaining such issues as the competency of the individual inmate to proceed *pro se.*[5]

The problems do not end here. Just because an inmate gets his transcript, he still

---

**3.** The majority opinion at footnote 1 incorrectly implies that it is only defendants who seek to file a *pro se* supplemental brief that are given a copy of the briefs when in fact all public defender clients are mailed a copy of the briefs in their cases when they are filed with the court. Arrangements are made to read the briefs to inmates who are illiterate and translate them for those who do not understand English.

**4.** *Case v. State,* 364 N.W.2d 797, 800 (Minn. 1985). This answers any concern that a defendant might have about raising issues his appointed counsel would choose in the exercise of professional discretion not to address and negates any claim that the indigent defendant is being denied the opportunity to address the court in his appeal. *Chamberlain v. Ericksen,* 744 F.2d 628 (8th Cir.1984) *cert. denied,* 470 U.S. 1008, 105 S.Ct. 1368, 84 L.Ed.2d 387 (1985); *Hines v. Enomoto,* 658 F.2d 667 (9th Cir.1981) *cert. de-*

*nied,* 463 U.S. 1211, 103 S.Ct. 3545, 77 L.Ed.2d 1394 (1983) (ability to file supplemental brief satisfies any hypothetical right to proceed *pro se* on appeal).

**5.** There obviously would be the problems of breach of client confidences to the extent that the State Public Defender would be relying on information it received while still in an attorney-client relationship in making these assessments or reporting potential problems to the involved court ruling on the request to proceed *pro se.* More fundamentally, because that office would be discharging a ministerial function rather acting in a traditional role of counsel in handling requests to proceed *pro se* on appeal, it would be exposed to federal civil rights suits over its discharge of that function and forced to defend no matter how frivolous the claim might be.

must write the brief. While we can say that it is the inmate's problem that he finds himself without adequate resources to research and write an effective brief, the true result more likely will be that when an appellate judge reads an incomprehensible *pro se* brief, that judge will be forced, out of conscience, to wear two hats—that of judge and that of advocate—in order to assure the integrity of our reviewing function.[6] This will also be true of our law clerks doing research and preparing bench memos, when issues and cases have not been adequately briefed. Do we have the resources to do this and is it appropriate for us to do so? Moreover, when the clerk's office receives a *pro se* brief that is nonconforming, whether in format, number of required copies or proof of service, are we going to be as hardline as the majority claims since none of these defects is truly jurisdictional to the appeal?

There are more problems but I do not think it is necessary to elaborate further. If we are to make a policy change, it seems to me we should be extremely cautious and do no more than to allow Seifert to proceed *pro se* on appeal and to evaluate further requests to proceed *pro se* on appeal on an individual basis.

In conclusion, I would retain the existing system because it is not constitutionally deficient and it has worked well. Moreover, as I read the criminal rules, they do not contemplate *pro se* litigation on appeal at public expense. The only change I would make would be to allow defendants temporary, limited access to already prepared transcripts for *pro se* supplemental brief preparation. In the alternative, if there is to be a change, we should only suspend the current rules so as to allow Seifert to proceed *pro se* with access to the transcripts that have already been prepared. The Supreme Court Advisory Committee should then be directed to study the issue and draft any proposed changes, having in mind that there is no constitutional or statutory requirement that there be any change.[7]

For these reasons, I respectfully dissent.

SIMONETT, Justice (dissenting).

I respectfully dissent.

I agree with the majority that Minn.Stat. § 611.25 and Rule 28.02 do no more than entitle a defendant to the Public Defender's help on appeal; neither the statute nor the rule says the defendant must accept the Public Defender's help. At this point, however, I part company with the majority opinion. Because neither the statute nor the rule says the defendant must accept what he is entitled to, it does not mean that this court is precluded from addressing the question our rule fails to address, namely, should the Public Defender represent the defendant even when the defendant objects? I do not read sections 481.02, subd. 1, and 611.14 to answer the question. We need not read our rule to say what it does not say. In other words, we are free to decide whether or not pro se appeals are permissible.

As Justice Wahl points out in her dissent, there is a basic theoretical and functional difference between the rights to counsel and self-representation on appeal and the same rights at trial. *See United States v. Gillis,* 773 F.2d 549, 559–60 (4th Cir.1985). Moreover, as a practical matter, an appeal, both with respect to its procedural processing and its substantive presentation, requires a professional expertise that a pro se defendant simply does not have. To

---

6. I, for one, do not believe that the majority of the *pro se* briefs we will receive will be the product of the individual defendant himself as opposed to some inmate writwriter, notwithstanding any certification to the contrary signed by the defendant upon filing of the brief. No one could be so naive as to believe that those writwriters offer their services out of the goodness of their heart, and I am concerned for those easily manipulated inmates who will be preyed upon as a result.

7. Recognition from the outset that any procedure permitting self-representation on appeal is only by leave of this court and not a matter of statutory or constitutional right will hopefully also serve as fair warning to *pro se* defendants that abuse of any privilege afforded them in this regard may well lead the court to revert back to the current procedure.

allow a rudderless appeal accompanied by an unwieldy procedural superstructure is unfair to the defendant and unfair to the appellate court.

I would hold that pro se appeals are not allowed and that the Public Defender's current practice in handling these appeals should govern, including the practice of giving the defendant an opportunity to "represent himself" by filing a supplemental pro se brief, plus access, as needed, to the already prepared transcript. Our advisory rules committee should then draft a rule guided by our directions as given in our opinion and submit it to us for our consideration. For the reasons set out in Justice Wahl's dissent, I see no constitutional problems in doing this.