*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A13-2043**

State of Minnesota,
Respondent,

vs.

David Brian Triemert,
Appellant.

**Filed August 4, 2014
Affirmed
Rodenberg, Judge**

Washington County District Court
File No. 82-CR-13-2063

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Joseph D. Van Thomme, Thomas J. Weidner, Eckberg, Lammers, Briggs, Wolff & Vierling, PLLP, Stillwater, Minnesota (for respondent)

David B. Triemert, Lake Elmo, Minnesota (pro se appellant)

Considered and decided by Chutich, Presiding Judge; Johnson, Judge; and Rodenberg, Judge.

**U N P U B L I S H E D   O P I N I O N**

**RODENBERG**, Judge

Pro se appellant David Brian Triemert challenges his convictions, arguing that the district court "hindered, obstructed, and foreclosed" his defense during the pretrial proceedings and the three-day jury trial. We affirm.

## FACTS

On May 29, 2013, Washington County sheriff's deputy Nicholas Sullivan was patrolling near St. Croix Beach. He passed the Beach Bar, where he noticed a black pickup truck with bright blue, nonstandard license plates that displayed these words: "Private property, not a 'motor vehicle.'" Deputy Sullivan knew that appellant, a self-identified "sovereign citizen," owned this truck. Deputy Sullivan surveilled the Beach Bar from several blocks away. He testified that he "sat there with the intention of just running surveillance to see if the vehicle did indeed leave the lot and start traveling on a Minnesota road, which would be a violation of state law." At some point, another deputy parked next to Deputy Sullivan's squad car to assist in the surveillance.

Deputy Sullivan testified that he saw appellant leave the bar and drive his truck past the deputies at "an apparent high rate of speed," as "it's only 15 miles an hour on [that street]." The two deputies began following appellant in their squad cars. Deputy Sullivan caught up to the truck and paced it as traveling at 64 miles per hour in a 50-mile-per-hour zone. Based on the truck's speed and its nonstandard license plates, Deputy Sullivan activated his overhead lights to conduct a traffic stop. Appellant continued driving for some time, and then pulled into a parking lot.

Deputy Sullivan approached the truck and identified appellant as the driver. Appellant opened his window approximately two inches, and Deputy Sullivan asked for a driver's license and proof of insurance through the narrow opening. Appellant refused to lower his window any further, and attempted to hand Deputy Sullivan two sheets of paper, neither of which was a driver's license or proof of insurance. Deputy Sullivan

2

again asked for a license and proof of insurance, which appellant repeatedly refused to provide. Deputy Sullivan informed appellant that he was under arrest, and appellant called 911. Deputy Sullivan then threatened to break the window, and appellant finally opened his door.

Deputy Sullivan testified that he "took control of [appellant]" and spun him around, placing him against the bed of his truck. The two deputies were able to handcuff appellant. They searched him for weapons, finding him to be unarmed. Deputy Sullivan noticed that appellant smelled of alcohol and had bloodshot and watery eyes. He asked appellant to perform field sobriety tests. Appellant refused. Deputy Sullivan then drove appellant to the Washington County jail.

Once at the jail, appellant was read the implied consent advisory. Appellant chose not to contact an attorney, and then he refused to give a breath sample, stating that he thought the stop was unlawful. Appellant was thereafter charged with third-degree test refusal, fourth-degree driving while impaired (DWI), obstructing legal process, expired registration, failure to produce proof of insurance, and failure to yield the right of way to an emergency vehicle. *See* Minn. Stat. §§ 169A.20, subds. 1, 2, 609.50, subd. 1(1), 169.79, subd. 1, .791, subd. 2, .20, subd. 5(a) (2012).

Before trial, the district court stated to appellant: "I haven't previewed all your evidence. I can tell you that I looked through your exhibit list. And I only saw two things that could potentially be relevant. . . . Everything else looks completely irrelevant and probably prejudicial and inadmissible." But the district court also said that it was not ruling on the admissibility of the evidence at that time, explaining further: "I am

probably going to have to see what the record shows [when you attempt to introduce your exhibits]. And if there is an objection as to relevance, I [will] make a ruling on it at the time." The district court further explained that it is the district court's "overarching responsibility to run a fair trial. . . . And that means fairness to [appellant] and fairness to the state. And so on . . . some occasions the court will interrupt, or object, or kind of control things sua sponte or on its own." During the trial, appellant never attempted to introduce any of his proposed exhibits.

Before trial, appellant had the district court issue subpoenas to several witnesses. The record suggests that appellant believed these witnesses would testify regarding a conspiracy by Washington County representatives and its employees to target appellant based on his recent political activity. Many of those witnesses moved to quash the subpoenas before trial. At a hearing on the issue, the district court explained: "In a criminal case, I don't usually raise much question . . . initially about who the defendant wants to subpoena because I don't know what's relevant and what's not." The district court then conducted a thorough inquiry of the expected testimony of each of the subpoenaed witnesses. Of the witnesses that appellant subpoenaed, the district court quashed all of the subpoenas except one, concluding that those witnesses would not have any firsthand knowledge of the relevant facts underlying the charges. Appellant then agreed not to call the last subpoenaed witness because he was "not happy with [the district court's] rulings on the other ones."

After a three-day jury trial at which appellant represented himself, appellant was convicted of third-degree test refusal, obstructing legal process, expired registration, and

4

failure to provide proof of insurance. He now appeals from his convictions, arguing that the district judge "hindered, obstructed, and foreclosed" his defense.

## DECISION

Appellant's brief is dedicated almost exclusively to discussing the importance of a criminal defendant's right to proceed pro se. Appellant argues that he "was prevented out of hand at nearly every turn by the presiding judges and trial judge from presenting any meaningful defense," resulting in what appellant claims to have amounted to a denial of his right to represent himself at trial.

A criminal defendant has a constitutionally protected right to counsel. U.S. Const. amend. VI; Minn. Const. art. 1, § 6. But a defendant also "has a constitutional right to proceed without counsel when he voluntarily and intelligently elects to do so." *Faretta v. California*, 422 U.S. 806, 807, 95 S. Ct. 2525, 2527 (1975). We will overturn a finding of a valid waiver of a defendant's right to counsel only when that finding is clearly erroneous. *State v. Jones*, 772 N.W.2d 496, 504 (Minn. 2009). The parties agree that appellant did represent himself at trial. And appellant does not argue that his waiver of counsel was improper. The district court properly allowed appellant to represent himself.

Appellant's remaining arguments appear to be that the district court's evidentiary rulings and other trial-management rulings amounted to a deprivation of his right to represent himself at trial. We review evidentiary and trial-management rulings for an abuse of discretion. *State v. Amos*, 658 N.W.2d 201, 203 (Minn. 2003). And we note that Minnesota courts require pro se criminal defendants to comply with standard rules of court procedure and "[n]o extra benefits will be given to pro se litigants." *State v. Seifert*,

5

423 N.W.2d 368, 372 (Minn. 1988). "On appeal, the appellant has the burden of establishing that the [district] court abused its discretion and that appellant was thereby prejudiced." *Amos*, 658 N.W.2d at 203.[1]

Appellant argues that he was prejudiced by the district court's refusal to "allow any more than one or two of [his] 28 exhibits on file to be entered into evidence, and that none of the six witnesses employed by the state and subpoenaed by appellant [were] required to take the witness stand." With respect to appellant's exhibits, we note that he never offered any of his exhibits, and therefore we are unable to review the district court's ruling on the admissibility of those exhibits.[2] *See* Minn. R. Evid. 103 (regarding offers of proof and the making of a record of district court rulings on admissibility of evidence).

---

[1] Most of appellant's arguments do not have citations to legal authority or the record. *See State v. Wembley*, 712 N.W.2d 783, 795 (Minn. App. 2006) (noting that an assignment of error in a brief based on "mere assertion" and not supported by argument or authority is waived unless prejudicial error is obvious upon mere inspection), *aff'd on other grounds*, 728 N.W.2d 243 (Minn. 2007). We decline to base our opinion solely on appellant's noncompliance with *Wembley*, and we address what we discern to be the substance of appellant's appeal. "When an appellant acts as attorney pro se, appellate courts are disposed to disregard defects in the brief, but that does not relieve appellants of the necessity of providing an adequate record and preserving it in a way that will permit review." *Thorp Loan & Thrift Co. v. Morse*, 451 N.W.2d 361, 363 (Minn. App. 1990), *review denied* (Minn. Apr. 13, 1990). Much of appellant's briefing, as noted above, discusses his right to represent himself, a right which appellant was undeniably allowed to exercise. We nonetheless do our best to review appellant's arguments on appeal.

[2] But we also observe that most of appellant's exhibits appear to be copies of the federal and state constitutions, federal and state statutes, the complaint, etc. None of these exhibits would be relevant under rule 402. Even if appellant had preserved the record by offering the exhibits and even if appellant had fully briefed this issue, we would see no error in the district court's evidentiary rulings.

Concerning the witnesses that appellant subpoenaed, the district court engaged in a thorough inquiry into whether each witness would have personal knowledge of relevant facts. *See* Minn. R. Evid. 402 (relevance), 602 (personal knowledge of witnesses). The district court did not abuse its discretion in quashing all but one of the subpoenas. *See Amos*, 658 N.W.2d at 203; *see also* Minn. R. Crim. P. 22.01, subd. 5 (noting that a subpoena can be quashed "if compliance would be unreasonable"). Appellant voluntarily declined to call his remaining witness. And, in any event, appellant has not met his burden of showing prejudice resulting from the district court's rulings, as he has not explained in his briefs on appeal what material facts these witnesses' testimony would have contained. *See Amos*, 658 N.W.2d at 203.

Appellant next argues that during his cross-examination of the arresting officer, he "was repeatedly interrupted by the [district court] and prevented from conducting a thorough cross-examination of the state's witness, and wherein his 75 pages of questions relevant to the witness's personal knowledge of the charges and the law were skillfully whittled down . . . to approximately 10 pages of questions being asked of the witness, all made possible by way of the continual interruptions made by the [district] court judge." Our review of the record convinces us that the district court did its best to allow appellant's questioning within established rules of evidence and procedure.

The district court did not err by holding appellant to adherence to the same rules and standards to which a lawyer would be held in the circumstances. *See Seifert*, 423 N.W.2d at 372 (noting that pro se defendants must comply with standard rules of court procedure and "[n]o extra benefits will be given to pro se litigants"). In fact, our review

7

of the record convinces us that the district court gave appellant considerable leeway in the presentation of his defense. The district court did not abuse its discretion in conducting the trial as it did. *See Amos*, 658 N.W.2d at 203.

A criminal defendant's right to proceed pro se does not include the right to be excused from the rules of evidence, trial practice, and criminal procedure. In spite of appellant's inadequate briefing, we have thoroughly reviewed the record and see no error in the district court's conduct of the proceedings.

**Affirmed.**