STATE EX REL. ROBERT THOMAS v. DOUGLAS C. RIGG.

96 N. W. (2d) 252.

April 17, 1959—No. 37,657.

228

 

*Robert Thomas,* pro se, for appellant.

*Miles Lord,* Attorney General, and *Charles E. Houston,* Solicitor General, for respondent, warden of Minnesota State Prison.

NELSON, JUSTICE.

Relator petitioned for a writ of habeas corpus, which was granted. His petition is unnecessarily long, consisting of 22 pages, and states much that is immaterial. The relator was arrested in Morgan, Minnesota, on July 26, 1950. He voluntarily waived preliminary hearing and later, before the District Court of Redwood County, presented an application to enter a plea of guilty to the charge of robbery in the second degree. In his presence, the court directed the reading of the information. In explaining the information, the court stated: "You understand that if you plead guilty to this information, the Court may find it necessary to sentence you to a penal institution?" Defendant answered, "Yes." Other questions and answers were as follows:

"THE COURT: You understand that?

"DEFENDANT: Yes.

"THE COURT: How old are you?

"DEFENDANT: Twenty-seven.

"THE COURT: Do you have a lawyer?

"DEFENDANT: No, sir.

"THE COURT: Do you want a lawyer?

"DEFENDANT: No, sir.

"THE COURT: Will you read the information, Mr. Reed? The information was thereupon read aloud by the County Attorney, Mr. Reed.

"THE COURT: To that information, Mr. Thomas, charging you with committing the crime of robbery in the second degree, as set forth, do you plead guilty or not guilty?

"DEFENDANT: Guilty, sir.

"THE COURT: You will raise your right hand and be sworn."

Relator was thereupon sworn and related that he had been married; that he had lived in Morgan since January 7, 1950; that he had served

in the army air corps for a period of 3 years, following an enlistment in 1947; that he had served in the United States Navy from 1941 to 1945; and that he had received an honorable discharge from both branches of the service. Later, however, he told the court that he meant a satisfactory conduct discharge from the navy. While in jail following his arrest, he was visited by members of his family from time to time. He comes from a large family consisting of his parents, five brothers and five sisters, some of whom lived at Luverne, Iowa. He testified to being divorced in 1947 while stationed at Fort Cook, Nebraska. When questioned about the charge contained in the information, he answered as follows:

"Q. Now, Mr. Thomas, on July 21st of 1940, [sic] did you break into Beng's Texaco Service Station in the City of Redwood Falls in this County?

"A. Well, sir, I didn't break in.

"Q. Well, did you go in? What time of the night did you go in there?

"A. I would say it was after 2:00, sir.

"Q. In the morning?

"A. Yes.

"Q. Tell me what you did.

"A. Well, I went in the station.

"Q. How did you get into the station?

"A. Through the front door.

"Q. Was it open?

"A. Yes, sir.

"Q. Go ahead.

"A. And I went in and I seen some money laying on the cash register. I picked it up. It was two five-dollar bills and four one dollar bills. I didn't know him at the time, but the gentleman was sitting there on the stool, and he got up, and I hit him, and I went out.

"Q. What did you hit him with?

"A. A pair of pliers.

\* \* \* \* \*

"Q. How many times did you hit him?

"A. Just once \* \* \*.

"Q. How much money did you take?

"A. Fourteen dollars, sir.

&ast; &ast; &ast; &ast; &ast;

"Q. What did you do with the money?

"A. I spent it.

&ast; &ast; &ast; &ast; &ast;

"Q. Did you ever go back to find out whether this man was injured?

"A. No, sir.

"Q. You know he was hurt?

"A. No, sir.

"Q. You know now that he was hurt?

"A. I don't know.

&ast; &ast; &ast; &ast; &ast;

"Q. Do you know Mr. Thomas, that Mr. Leonard Frank, the man who was in the filling station on the night of the robbery was quite seriously injured by you?

"A. No, sir.

"Q. Weren't you ever told?

"A. No, sir.

"Q. Don't you know you hit him on the head with the pliers and very seriously injured him and gave him a concussion?"

Thereafter relator was sentenced to the state reformatory in St. Cloud. Later he was transferred to the state penitentiary at Stillwater, where he has since been confined.

The relator alleges that while in the county jail between July 26, and August 18, 1950, he was kept from seeing his relatives or friends and refused the opportunity to solicit funds through friends and relatives in order to carry on his defense; that he was misled into pleading guilty by reason of certain promises of leniency made to him; and that he was subjected to numerous requests to sign a confession of guilt in connection with the entreaties and promises made to him.

It appears from a deposition of Thomas F. Reed, county attorney of Redwood County, taken at the request of the respondent, that the allegations with reference to any unfair treatment or undue advantage taken by either the sheriff or the county attorney between the time of relator's arrest and his entry of a plea of guilty were absolutely false

and the record so indicates. He sought and had the opportunity to engage competent counsel of his own choosing according to letters constituting a part of the file herein. He had, on his own, consulted two different attorneys. One of the lawyers to whom relator wrote stated that he would require a retainer and that until the matter of representation had been decided upon relator should not waive the right to a preliminary hearing. Members of his family also sought representation of counsel in his behalf. The record indicates that he was unable to raise bail or to enlist any funds to conduct a defense. It also appears that relator had been guilty of several offenses prior to committing the robbery involved; that he had been arrested and charged with assault to which he pleaded guilty and was sentenced on June 12, 1950, in the municipal court of Redwood Falls; that he had been arrested and court-martialed while in the army for having taken part in the theft of a truck, for which he received a 6-month sentence. It further appears that he was arrested in July 1948 on a charge of bigamy and was brought from Denver, Colorado, to Sioux City, Iowa, to answer to the charge.

A hearing was held pursuant to relator's petition and the order of the District Court of Washington County directing the issuance of the writ of habeas corpus. Relator appeared in person and respondent appeared through the attorney general. The deposition of Thomas F. Reed constituted a part of the testimony taken in the proceedings. The relator offered no opposing testimony nor have we any record of any statements which the relator may have made on his own behalf. The court found at the close of the hearing that relator, in waiving appointment of counsel to represent him and in entering his plea of guilty to the information, did so voluntarily, understandingly, and intelligently and concluded that relator is in the lawful custody by virtue of the final judgment of a competent court of criminal jurisdiction and not entitled to discharge or release therefrom. The court ordered the writ discharged and relator appealed from its order.

It appears from the files that the solicitor general thereafter wrote a letter to relator, which in part read as follows:

"The Supreme Court necessarily must have a record, either the one taken before Judge Johnson or a record of proceedings before a referee.

It is for you to decide what you want to do. Unless a stipulation is made between us providing for such a record or you take some affirmative step to get a record before the Supreme Court, it will be in order for the attorney general to move to dismiss the appeal. I will wait a reasonable time to hear from you."

In his reply, relator in closing said:

"I also received a letter from Frank Larkin, Deputy Clerk, Supreme Court, dated September 9, 1958, stating that the calendar is set through the first week of December and since my brief and record has not been filed, my case has not yet been placed on the calendar. Since the rules do not apply with respect to placing an exact time limit within which a brief must be filed in a habeas corpus proceeding, I am allowing myself more than ample time, I believe, in stating that I shall have my brief and other necessary papers filed by the 1st day of November, 1958."

This answer to helpful suggestions made by the solicitor general does not suggest any lack of understanding on the part of the relator but rather that he may have chosen not to testify at the hearing on his application to obtain a writ of habeas corpus.

Supreme Court Rule VIII(1) (222 Minn. xxxii, as amended, 233 Minn. vi) provides that:

"The appellant or party removing a cause to this court shall, within *60 days from the date of service of the notice of appeal upon opposing counsel,* serve upon the opposite party the printed record and his brief, and file with the clerk of this court 15 copies of each thereof; and within 30 days from such service upon him the respondent shall serve his brief and file with the clerk 15 copies thereof; * * *. The failure of appellant to comply with this rule in respect to printing and serving the record and his brief and filing the same with the clerk of this court within the time stated will be deemed an abandonment of the appeal, and the order or judgment appealed from will be affirmed or the appeal dismissed, as the court may deem proper."

Although the notice of appeal was received by the attorney general August 5, 1958, no record has been filed. Respondent has therefore moved this court for an order dismissing the appeal. It is clear from

the provisions contained in said rule that this court may for lack of compliance either affirm the order appealed from or dismiss the appeal as it may deem proper.

■ The files submitted in this matter are complete, except for a lack of any testimony offered by relator at the hearing in the habeas corpus proceedings. Relator has challenged the sufficiency of the allegations of the information but it is clear that the sufficiency of such allegations cannot now be challenged in a habeas corpus proceeding. Based upon what the files disclose, there is little merit in relator's claim that the information did not adequately define the crime of robbery in the second degree so that it became exactly known to him what crime had been committed.[1] It is elementary that habeas corpus may not be used as a substitute for a writ of error or appeal or as a cover for a collateral attack upon a judgment of a competent tribunal which had jurisdiction of the subject matter and of the person of the defendant. This principle applies even though defendant has permitted the time for appeal to elapse. State ex rel. Baker v. Utecht, 221 Minn. 145, 21 N. W. (2d) 328, certiorari denied, 327 U. S. 810, 66 S. Ct. 971, 90 L. ed. 1034; Shaw v. Utecht, 232 Minn. 82, 43 N. W. (2d) 781, certiorari denied, 340 U. S. 855, 71 S. Ct. 73, 95 L. ed. 627; State v. Rudin, 153 Minn. 159, 189 N. W. 710; 25 Am. Jur., Habeas Corpus, § 41; 39 C. J. S., Habeas Corpus, § 20; 8 Dunnell, Dig. (3 ed.) § 4129.

■ Relator contends that he has been denied a public trial as guar-

---

[1]M. S. A. 619.41 contains the definition of robbery; § 619.42 provides what constitutes robbery in the first degree; § 619.43 provides: "Such unlawful taking, when accomplished by force or fear, in a case specified in sections 619.41 and 619.42, but not under circumstances amounting to robbery in the first degree, shall be robbery in the second degree when accomplished:

"(1) By the use of violence; or

"(2) By putting the person robbed in fear of immediate injury to his person, or that of some one in his company."

Section 619.44 states that every person who shall rob another under circumstances not amounting to robbery in the first or second degree shall be guilty of robbery in the third degree. The information to which relator pleaded guilty in the instant case recited the facts of the robbery, the force and violence applied, and stated clearly that it constituted robbery, but did not constitute robbery in the first degree.

anteed by U. S. Const. Amend. VI, on the grounds that the record fails to show that his waiver of representation of counsel was understandingly and intelligently exercised.

We held in State ex rel. Baker v. Utecht, *supra,* that it is elementary that this amendment does not apply to a state criminal prosecution, citing Gaines v. Washington, 277 U. S. 81, 48 S. Ct. 468, 72 L. ed. 793; Annotation, 146 A. L. R. 403, 404. We need only consider here whether there has been a denial of public trial and the right to have the assistance of counsel in his defense as guaranteed by Minn. Const. art. 1, § 6, so as to deprive relator of due process of law in violation of U. S. Const. Amend. XIV, as well as of Minn. Const. art. 1, § 7.

M. S. A. 630.10 provides that:

"If the defendant shall appear for arraignment without counsel, he shall be informed by the court that it is his right to have counsel before being arraigned, and shall be asked if he desires the aid of counsel."

Section 611.07, subd. 1, provides that:

"When a defendant shall be arraigned upon indictment or information for any felony or gross misdemeanor and shall request the court to appoint counsel to assist in his defense, and satisfied it by his own oath or other required proof that he is unable, by reason of poverty, to procure counsel, the court shall appoint counsel, not exceeding two, for such defendant, to be paid, upon his order, by the county in which the indictment was found. * * *"

It is clear that the purpose of the right to have counsel made available is to protect the accused from a conviction resulting from his own ignorance of his legal and constitutional rights. It is, therefore, as was said by this court in State ex rel. Schwanke v. Utecht, 233 Minn. 434, 47 N. W. (2d) 99, good practice not only to require that the court, before arraignment of the accused, inform defendant in precise terms of his constitutional right to assistance of counsel, but also that such informative action by the court be at all times made a matter of record.

In State ex rel. Moriarity v. McMahon, 69 Minn. 265, 267, 72 N. W. 79, 80, 38 L. R. A. 675, this court held that:

"* * * Habeas corpus takes cognizance only of defects of a juris-

dictional character, which render a proceeding not merely voidable, but absolutely void."

■ In Johnson v. Zerbst, 304 U. S. 458, 464, 58 S. Ct. 1019, 1023, 82 L. ed. 1461, 1466, 146 A. L. R. 357, 362, the court held that:

"* * * A waiver is ordinarily an intentional relinquishment or abandonment of a known right or privilege. The determination of whether there has been an intelligent waiver of the right to counsel must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused."

■ In Moore v. Michigan, 355 U. S. 155, 78 S. Ct. 191, 2 L. ed. (2d) 167, it was held that when an accused without counsel acquiesces in a trial resulting in his conviction, and later seeks release, the rule is well settled that the burden rests upon him to establish that he did not competently and intelligently waive his right to assistance of counsel, citing Johnson v. Zerbst, *supra*. It was also held in the Moore case that the same rule applies to a subsequent claim that the plea was induced by coercion, by threats, or by intimidation. In the instant case any such charges on the part of the relator have been fully met by the deposition of the county attorney and must be ruled out.

■ It will be observed that the basis of an accused's right to counsel under the Federal Constitution varies according to whether prosecution takes place in a Federal or in a state court, the right of an accused to the assistance of counsel having a much broader constitutional scope in the Federal courts than the same right in a state court prosecution. The rule seems to be that, while the right to counsel as secured by the due process clause of Amend. XIV in a state prosecution does not justify forcing counsel upon an accused who wants none, the due process clause invalidates a state court conviction where an unrepresented accused has not voluntarily, intelligently, and understandingly waived the benefit of counsel and where the circumstances show that his rights could not have been fairly protected without counsel. See Annotation, 2 L. ed. (2d) 1644, relative to accused's right to counsel under the Federal Constitution and cases cited.

In Moore v. Michigan it was indicated that (355 U. S. 161, 78 S. Ct. 195, 2 L. ed. [2d] 172):

"* * * Whatever may be the differences in the substantive right to counsel in federal and state cases, when the defendant in a state case has established his constitutional right to the benefit of counsel, he should carry the same burden of proving nonwaiver as is required of a defendant in a federal case. * * * the burden of showing, by a preponderance of the evidence, that he did not intelligently and understandingly waive his right to counsel."

And in United States v. Morgan, 346 U. S. 502, 512, 74 S. Ct. 247, 253, 98 L. ed. 248, 257, that:

"* * * Of course, the absence of a showing of waiver from the record does not of itself invalidate the judgment. It is presumed the proceedings were correct and the burden rests on the accused to show otherwise."

Also, see Annotation, 146 A. L. R. 369, on relief in habeas corpus for violation of accused's right to assistance of counsel, and Annotation, 20 A. L. R. (2d) 1240, on absence of counsel at sentence. From the cases cited in Annotation, 2 L. ed. (2d) 1644, commenting on right to counsel, it is apparent that the courts recognize it as permissible and well within due process of law for an accused to waive his rights to the assistance of counsel providing that he did so voluntarily, understandingly, and intelligently.[2]

This court has said in State v. Tupa, 194 Minn. 488, 495, 260 N. W. 875, 878, 99 A. L. R. 147, that "Waiver is a voluntary relinquishment of a known right," and in Martin v. Wolfson, 218 Minn. 557, 569, 16 N. W. (2d) 884, 890, that "Except as limited by public policy, a person may waive any legal right, constitutional or statutory."

■ We think the particular facts and circumstances in the case at bar, including the background, experience, and conduct of relator, which appear to be quite fully set forth in the record made before the district court at the time of sentencing, fairly indicate that the waiver of counsel on his part was done voluntarily, understandingly, and intelligently.

On appeal from discharge of writ of habeas corpus, trial in the

---

[2]See Annotation on substantial compliance with the duty to advise of right to counsel, 3 A. L. R. (2d) 1042, in which is cited the Minnesota case of State v. McDonnell, 165 Minn. 423, 206 N. W. 952.

supreme court is de novo, and the supreme court will draw its own conclusions from the evidence. The rules as to service of briefs and assignments of error are not applicable. A reference is ordered when necessary to take testimony. Although the attorney general advised the relator herein of his rights in that respect, he has deliberately waived such rights. This court may, where a referee has not been appointed to take testimony, consider the question as to whether the petition on its face presents a case for the issuance of a writ of habeas corpus. On the state of the record on this appeal the court may clearly choose to consider the case on the record below. See, 8 Dunnell, Dig. (3 ed.) § 4142.

Based upon all the files which have been made available to this court in this case and the provisions of Supreme Court Rule VIII(1) there appears to be ample justification for an affirmance of the order appealed from rather than a mere dismissal of the appeal as moved for by the attorney general. We therefore affirm the order of the court below discharging the writ of habeas corpus and remanding the relator to the custody of the respondent.

Affirmed.