STATE v. JAMES J. ULFERTS.

181 N. W. (2d) 104.

November 13, 1970—No. 41365.

*C. Paul Jones,* State Public Defender, and *G. Thomas MacIntosh II,* for appellant.

*Douglas M. Head,* Attorney General, *Robert W. Johnson,* County Attorney, and *Gerard W. Snell,* Assistant County Attorney, for respondent.

PER CURIAM.

Appeal by defendant, James J. Ulferts, from a judgment of conviction of the offense of third-degree murder. Defendant and his brother Thomas, who were charged with first-degree murder of a police officer,

waived jury trial. After a determination of guilt by the trial court, defendant on appeal contends that he was prejudiced by the use as evidence of statements made by his brother to an attending physician; that defendant's confessions were obtained against his will and in violation of his constitutional rights; and that he was also deprived of constitutional rights by failure of the authorities to promptly take him before a magistrate for arraignment and appointment of counsel.

It appears from the record that the brothers, James and Thomas Ulferts, ages 21 and 17 respectively, met with a group of other young people at a home in Coon Rapids, Minnesota, on the evening of June 9, 1967. Beer and liquor were consumed by those present at this gathering. James and Thomas left to go to their parents' home but returned a short time later. James brought with him a 9-mm. Luger and Thomas a .45-caliber revolver. About 11 p. m. the group decided to have a "field party." About 12:30 a. m. Gerald Boos, chief of police of the village of St. Francis, and another officer, John Carlson, who were on patrol duty, noticed a line of about five cars occupied by young people driving on County Road No. 9 in the village. They followed and watched them leave the road and enter a field. The officers parked their car in a location where they could see what was going on without being observed by the group. Shortly after, they heard gunshots and then proceeded into the field to investigate. It appears that defendant was angry with one of his companions for not bringing beer to the party. He started to discharge the Luger into the air and in the direction of the car driven by the youth who had neglected to bring the beer. This youth took off in his automobile and passed the police car as it entered the area. The police officers ordered the youths to remain in their cars and radioed for assistance. While the police were entering the field, defendant and his brother Thomas ran off into the adjoining woods. Chief Boos followed the boys, and Officer Carlson remained to guard the others and see that they did not leave. The sequence of events following Boos' entry into the woods in search of the two Ulferts boys is not clear from the record. It does appear, however, that Boos was fatally shot and died from two bullets which entered his body and penetrated vital organs in the abdomen as well as his lung and aorta. The evidence indicated that the fatal shots were the size of a 9-mm. bullet. In the melee that occurred, Thomas was also shot and wounded, and defendant sustained a minor injury from a bullet in the left leg. Near the place where Thomas was found, there was a .45-caliber revolver containing six expended cartridges. Near the body of Chief Boos was found a 9-mm.

cartridge and the 9-mm. Luger which had been in the possession of defendant.

Both brothers were charged by separate indictments with the crime of murder in the first degree. Defendant entered a plea of not guilty and, in preliminary proceedings, the state fully disclosed its evidence. Both defendants entered pleas of not guilty and agreed to be tried together.[1]

Defendant claims that admission of the testimony of Dr. Joseph

---

[1] The following proceedings took place preliminary to trial:

"MR. GIBBS [counsel for defendant]: Without going into the rather lengthy explanation that Mr. Johnson made, I wish to state for the record that the same matters that were discussed with Thomas and discussed with the parents of both Ulferts boys were discussed by myself with James, that we are requesting at this time that the cases be consolidated for trial. We are orally or verbally waiving our right to a jury trial. The matter has been gone into and considered by myself and James. Mr. Johnson has covered the matter thoroughly with the parents, and the Court has given the instructions to Thomas. James was present and is well aware of those instructions. We will be prepared at the time of the trial to submit to the Court a written waiver of a jury. In addition we are asking that a psychiatric evaluation of James also be ordered by the Court by the Minneapolis Psychiatric Clinic.

"THE COURT: The order will issue with respect to the psychiatric examination, and upon the written authorization and request by the defendant, the cases will be consolidated for trial if they are tried, and the waiver of a jury may also be permitted at the request of the defendants, defendants' counsel and the parents of the defendants.

"MR. GIBBS: I would like to again for the record, James, I have discussed these matters with you, you understand to the best of your ability?

"MR. JAMES ULFERTS: Yes.

"MR. GIBBS: You do agree with the motions and the things being done today with regard to your trial?

"MR. JAMES ULFERTS: Yes, I do.

"MR. GIANCOLA [assistant county attorney]: I would like to ask one question of this defendant in the presence of his parents and the Court, that you were present during the arraignment of Thomas Ulferts, and you heard the Court instruct Thomas as to rights to a jury trial and so forth, you clearly understood this?

"MR. JAMES ULFERTS: Yes.

Moriarty, who was Thomas' attending physician, was prejudicial error. Dr. Moriarty stated that while he was treating Thomas' wounds, Thomas said: "My brother fired first. I fired, too. That's how— — dumb I am."

Because Thomas did not take the stand, defendant contends this testimony should not have been admitted. Both defendants were aware that this testimony would be given, and the trial court in its pretrial order determined that the statement was admissible as a non-privileged communication. Defendant sought the advantages which might come from being tried with his younger brother and was aware of the risk of the court's hearing evidence as to his brother which would not be strictly relevant as to him. It was made clear by the court that it would consider such testimony only as evidence bearing upon the guilt or innocence of the codefendant to whom it related. Experienced counsel

---

"Mr. Giancola: So there isn't any hesitation in your mind as to the proceedings today and things which are to follow?

"Mr. James Ulferts: No."

The so-called lengthy statement of Mr. Johnson referred to by Mr. Gibbs was as follows:

"Mr. Johnson: We have one last request to make. Assuming that Mr. James Ulferts will be tried for the crime of Murder in the first degree related to this indictment, being the same incident in which Thomas Ulferts is here charged, and assuming that he will waive a jury as we expect he shall and the court will most likely accept such waiver, I then move that the two cases be consolidated for trial with the understanding, of course, if there is any evidence which may be admissible to one but not as to the other that the court would consider it only as to the one which is admissible. In making this motion I would like the right to show this is a very difficult position. That I have discussed this likewise with the parents on many occasions. I have discussed it with the boy Thomas on a few occasions and with the boy James on one occasion. I have advised them of the possibilities of different degrees of the crime involved, of the possibilities of being involved in aiding and abetting in the commission of a crime and the consequences that might dangerously follow from separate trials and consequences which might dangerously follow from a consolidation of trials. Viewing the whole situation it is my recommendation that they be tried together. Again, if the defendant James has any request I ask the court to explain the fact that he is entitled to a separate trial if he wishes but I would move for consolidation."

for Thomas Ulferts stated to the court: "I assume, without making objection from time to time, the Court will use evidence only to the one it directly applies to so that we need not try to separate the record." The court responded: "The Court will do that in every instance." The record also establishes that defendant had been informed of the risks inherent in consolidation of the trials and nevertheless had acquiesced therein. It requires no discussion to demonstrate that, under the circumstances, defendant knowingly waived whatever objections he may have had with reference to the admissibility of the evidence complained of. 28 Am. Jur. (2d) Estoppel and Waiver, §§ 161, 167; 21 Am. Jur. (2d) Criminal Law, § 344; State ex rel. Thomas v. Rigg, 255 Minn. 227, 96 N. W. (2d) 252; State ex rel. Redenbaugh v. Rigg, 255 Minn. 281, 96 N. W. (2d) 555; State v. Tupa, 194 Minn. 488, 260 N. W. 875, 99 A. L. R. 147; and Diaz v. United States, 223 U. S. 442, 32 S. Ct. 350, 56 L. ed. 500.

The claim that defendant's confessions were given against his will is without merit. He was taken into custody on the morning of June 10, was interviewed by police officers on three occasions, and, on the morning of June 12, gave a written statement to police officers at the Anoka County sheriff's office admitting the offense. During each of these interviews, the officers were careful to comply with Miranda requirements, and the record indicates that defendant fully understood his rights prior to the time he gave the confession.

Neither is there merit to the claim that defendant was denied constitutional rights by failure of the police officers to promptly take him before a magistrate for arraignment and appointment of counsel. We are satisfied from the record that there was no unreasonable delay in bringing defendant before a magistrate. We stated in State v. Madison, 281 Minn. 170, 160 N. W. (2d) 680, certiorari denied, 393 U. S. 1102, 89 S. Ct. 904, 21 L. ed. (2d) 796, and State v. Steeves, 279 Minn. 298, 157 N. W. (2d) 67, that there is no specific rule in Minnesota as to the length of time a suspect may be detained before being brought before a magistrate, and from the standards expressed in those decisions, we are of the view that there was no unreasonable delay. For over 24 hours after defendant was apprehended, he was hospitalized for injuries. Moreover, a weekend intervened between the time of his apprehension and arraignment. Accordingly, there was no undue delay. His arraignment on June 12, 1967, was both reasonable and practicable under the circumstances.

Affirmed.