**STATE of Minnesota, Respondent,**

v.

**Leonard RICHARDS, Appellant.**

**No. C8–89–744.**

Supreme Court of Minnesota.

June 1, 1990.

Leonard Richards, Stillwater, pro se.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, and Thomas L. Johnson, Hennepin County Atty., Lee W. Barry, Sr. Asst. County Atty., Appellate Section, Minneapolis, for respondent.

John M. Stuart, State Public Defender, Susan K. Maki, Asst. State Public Defender, Minneapolis, for amicus.

SIMONETT, Justice.

After a jury trial, defendant Leonard Joseph Richards was convicted of the first-degree premeditated murder of Robert Stratton and sentenced to life in prison.[1] On appeal, we conclude that defendant's constitutional right of self-representation secured by *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), was violated. We reverse, therefore, and grant a new trial.

Robert Stratton, the murder victim, was an attorney who knew defendant socially and professionally. Prior to his death, Stratton was representing defendant in federal court tax litigation in several states. In the Minnesota litigation, Stratton filed two affidavits to support petitions to quash summonses issued to appellant, who was listed as a director of three entities subject to the local investigation. These affidavits, apparently drafted by defendant, were fraudulent. The affiants did not exist. In December 1986 the federal district court denied the petitions to quash and issued an order making Stratton and the three entities jointly and severally liable for about $12,000 in costs and penalties.

Soon thereafter, the federal agent assigned to investigate defendant's taxes learned that Stratton was the guarantor of a trust in which defendant was the beneficiary. Part of the trust corpus consisted of stock donated by Stratton from a corporation formed by Stratton and the defendant. The agent issued a summons directing Stratton to appear before him on February 25, 1987, with all information he possessed relating to the trust and the corporation.

On February 23, 1987, 2 days before the scheduled meeting, Stratton left his law office with defendant Richards to go to lunch. Stratton never returned. The next day the police found his corpse in the house where defendant was living with Linda Winbush and her young children. Stratton had died from a close-range gunshot wound to the back of his head.

Defendant had been living in the Winbush home for about 11 months. A week or so before February 23, defendant told Linda to clean the basement so he could use it as an office for his paralegal work. Defendant said that he needed the office for a meeting with "clients" on February

---

**1.** Both defendant and the State Public Defender filed briefs on appeal. While defendant filed his own brief and desired to waive his right to counsel on appeal, we have allowed the State Public Defender to brief the case and argue as amicus.

19. A few days later defendant advised Linda that the meeting with the clients had been postponed until Monday, February 23, and that he wanted her and the children out of the house on that day. On the 22nd, defendant spray-painted the basement windows, installed latches, and covered the windows with contact paper.

On the 23rd, the day he was to meet with the "clients" and the day Stratton did not return from lunch, defendant drove Linda to her niece's house in Blaine, where the children had been staying. He returned to pick them up at about 11:00 p.m. that night. On the way home defendant told Linda and the children not to go into the basement because an electrician had been there and there were dangerous, exposed wires. Linda noticed dark stains on defendant's jeans, which defendant said were spots of paint. The basement door was barricaded when they arrived home.

The following day, February 24, defendant again insisted that Linda and the children leave the house. Linda had noticed what she thought was blood on a bar of soap and in the bathtub on the second floor, and fearing something terrible had happened, she put some of the blood-like substance on a tissue and took it to the police. After the police confirmed that the substance was blood, Linda told the officers about her fears and gave consent to a search of her home.

The police soon arrived at the house and, after kicking a door open to gain entry, found defendant inside. In the basement, the officers found the nude body of Robert Stratton. Defendant was arrested. There were numerous blood stains in the house, including spots on the stairway to the second floor, on the kitchen and dining room floors, and on the basement stairs. Some of the stains had recently been scrubbed methodically with a cleanser. The police recovered the jeans and shirt defendant had worn the previous night. The spots Linda had noticed on the jeans proved to be blood stains. Subsequently, the police found a recently fired gun and an expended bullet in a second floor room; both were consistent with the victim's fatal gunshot

injury. The police also recovered a 90-plus-page affidavit of Robert Stratton, partially typed, partially handwritten, and signed by Stratton. The evidence at trial showed that defendant had drafted both parts of the affidavit, which recited at great length defendant's business transactions giving rise to his tax problems and put the blame for those problems on others. While there is additional inculpatory physical and testimonial evidence, it need not be discussed in light of the disposition of this appeal. Suffice it to say that the evidence at trial was ample to sustain the conviction.

We must now, however, outline some of the procedural history that occurred after defendant's arrest on February 24, 1987, and his trial 25 months later, as this information is pertinent to the dispositive issue.

Defendant, who was unable to post bail, was represented by a succession of attorneys. Except for his first attorney (who was on the case for only a week) and his third attorney (with no criminal law experience), defendant found fault with the attorneys appointed to represent him. His request for funds to hire his own attorney was denied. At least twice he asked to be designated "co-counsel" with his appointed counsel.

On May 11, 1988, appellant filed a pro se motion requesting a hearing to remove his attorney, then Phillip Villaume, "for cause." Citing *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), appellant asserted his right of self-representation in the event the court did not consider his motion. No hearing was held.

On June 30, attorney Villaume's motion requesting the appointment of standby counsel was heard. Villaume referred to defendant's May 11 motion and asked the court to be appointed standby counsel. After a brief in-camera hearing, the motion was denied from the bench.

On July 5, defendant submitted another pro se motion, again citing *Faretta* and stating he was asserting his self-representation right "unconditionally." During a court appearance on July 26 on other mat-

ters relating to the case, Villaume told the court that defendant was again asserting his right to self-representation. At the same appearance, the prosecutor told the court that he thought defendant's July 5 assertion was unequivocal.

On August 16, the court held an in-camera hearing on Villaume's motion for an evidentiary hearing on the issue of appellant's pro se representation. The prosecutor submitted a memorandum outlining pertinent case law, citing again *Faretta*. Defendant told the court that he was asserting his right of self-representation to obtain "an overall managerial role in my case" and because "I don't feel that Mr. Villaume could represent me properly." Villaume added that he believed defendant was able to represent himself. The court noted, too, that a previous attorney who had represented defendant briefly thought defendant was "more competent to defend his case than 90% of the lawyers in the state." The court also had before it the report of a psychologist who had examined defendant pursuant to Minn.R.Crim.P. 20, which concluded that defendant, 46 years old, was "obviously intelligent, educated, and articulate" and spoke in a rational and organized manner. On August 17, the trial court issued its order finding that defendant did not knowingly and intelligently waive his right to counsel. Defendant's request to proceed pro se was denied.

The case then proceeded through trial with Villaume as counsel. In April 1989, after a 2–week trial, the jury found defendant guilty of first-degree premeditated murder. Defendant now appeals, contending his conviction must be set aside because he was denied his constitutional right of self-representation.

### I.

The United States Supreme Court has recognized that the sixth and fourteenth amendments to the federal constitution grant criminal defendants a right to represent themselves in state criminal proceedings. *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). This important right "must be honored out of 'that respect for the individual which is the lifeblood of the law.'" *Id.* at 834, 95 S.Ct. at 2541 (citation omitted). Indeed, the self-representation right embodies such bedrock concepts of individualism and personal autonomy that its deprivation is not amenable to harmless error analysis. "Obtaining reversal for violation of such a right does not require a showing of prejudice to the defense, since the right reflects constitutional protection of the defendant's free choice independent of concern for the objective fairness of the proceeding." *Flanagan v. United States*, 465 U.S. 259, 268, 104 S.Ct. 1051, 1056, 79 L.Ed.2d 288 (1984); *McKaskle v. Wiggins*, 465 U.S. 168, 177 n. 8, 104 S.Ct. 944, 950 n. 8, 79 L.Ed.2d 122 (1984). As a corollary, however, a defendant who exercises his right to proceed pro se "cannot thereafter complain that the quality of his own defense amounted to a denial of 'effective assistance of counsel.'" *Faretta*, 422 U.S. at 835 n. 46, 95 S.Ct. at 2541 n. 46; *McKaskle*, 465 U.S. at 177 n. 8, 104 S.Ct. at 950 n. 8.

When a criminal defendant asks to represent himself, the court must determine (1) whether the request is clear, unequivocal, and timely,[2] and (2) whether the defendant knowingly and intelligently waives his right to counsel. *Faretta*, 422 U.S. at 835, 95 S.Ct. at 2541. We conclude that defendant has clearly met both requirements.

### A.

The State contends that defendant's request for self-representation was equivocal because early in the proceedings defendant demanded that the court appoint a public defender to represent him; that later he wanted counsel of his choice, paid for with public funds, and sought to discharge appointed counsel; and that at other times defendant requested appointment as co-counsel. By the summer of 1988,

---

**2.** Some courts hold that a self-representation request is untimely if interposed solely for delay. *See e.g., Fritz v. Spalding,* 682 F.2d 782, 784 (9th Cir.1982). The State does not contend defendant's demand was untimely.

however, it was clear to everyone that defendant was adamantly asserting his right to represent himself. Defendant cited *Faretta* in two written motions demanding self-representation. In the July 5 motion he asserted his right "unconditionally." During the August 16 in-camera hearing, the defendant again demanded his right of self-representation. His appointed counsel made written and oral demands to the court to allow defendant to proceed pro se, suggesting in that event that he be appointed standby. At the July 26 hearing, the prosecutor specifically stated he thought defendant's July 5 demand was unequivocal, and on August 11 the prosecutor submitted a memorandum discussing relevant case law. While defendant expressed a preference to have a lawyer, he attached conditions to any such appointment which he knew would not be granted.[3] The case law is clear that "[a] request to proceed *pro se* is not equivocal merely because it is an alternative position, advanced as a fallback to a primary request for different counsel." *Johnstone v. Kelly*, 808 F.2d 214, 215–16 & n. 2 (2nd Cir.1986), *cert. denied*, 482 U.S. 928 (1987). *See Faretta*, 422 U.S. at 810 n. 5, 835–36, 95 S.Ct. at 2529 n. 5, 2541–42; and *see also Wiesner v. Abrams*, 726 F.Supp. 912, 919 (E.D.N.Y. 1989).

The record leaves us with no doubt that defendant asserted his right to represent himself in a clear, unequivocal, and timely manner.

### B.

The trial court found, in its August 17 order, that appellant did not make a knowing and intelligent waiver of his right to trial counsel. This finding, however, misapprehends the governing law and is clearly erroneous.

A waiver is an intentional relinquishment of a known right or privilege, and its validity depends, " 'in each case, upon the particular facts and circumstances surrounding the case, including the background, experience, and conduct of the accused.' " *State ex rel. Thomas v. Rigg*, 255 Minn. 227, 236, 96 N.W.2d 252, 258 (1959) (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938)). It is not necessary that defendant possess the skills and knowledge of a lawyer to waive the right to counsel and proceed pro se; these attributes are irrelevant to a determination of a knowing and intelligent waiver. *Faretta*, 422 U.S. at 835–36, 95 S.Ct. at 2541–42; *State v. Bauer*, 310 Minn. 103, 123 n. 13, 245 N.W.2d 848, 859 n. 13 (1976) ("Competence as used here does not refer to *legal* ability but rather the *mental* ability to make the waiver," citing *Faretta*.). *Faretta* cautions that a defendant "should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with his eyes open.' " *Id.* (citation omitted). Thus our own cases require the trial court to make a thorough inquiry into all pertinent concerns, especially if mental competency is in question, to make sure the defendant knows what he is doing. *E.g., State v. Bauer*, 310 Minn. 103, 122–26, 245 N.W.2d 848, 858–61 (1976) (adopting ABA Standards); *State v. Jones*, 266 N.W.2d 706, 711–12 (1978). This protects the defendant. It also dampens post-trial claims by the defendant that he should not have been allowed to waive his right.

In this case, the trial judge ruled that defendant could not make a knowing and intelligent waiver because: (1) defendant erroneously thought self-representation would increase his access to trial preparation materials; and (2) defendant lacked

---

**3.** At the August 16 in-camera hearing, when questioned by the trial court, defendant conceded that he would prefer to be represented by counsel, but he quickly attached provisos: counsel would have to be "competent, prepared, loyal, dedicated" and "with proper ancillary personnel and resources." Defendant explained, "I do not see those things existing here" and "I think I can do a better job."

It is true, as the dissent points out, that during this hearing, when asked what should be done, the defendant replied, "At this point I don't know." This exchange occurred, however, early in the discussion, at page 9 of a 22–page transcript, and the subsequent discussion made abundantly clear (as the preceding paragraph indicates) that defendant wanted to represent himself.

the ability to conduct his own defense. Neither reason invalidates a knowing and intelligent waiver.

Apparently defendant was not receiving many of the voluminous documents that attorney Villaume sent to him at the jail. Defendant told the judge his pro se demand was in part an attempt to correct this situation and obtain "managerial control." The judge warned defendant that if he was pro se, he would not thereby increase his access to the documents. Nevertheless, defendant continued to disagree. The trial court found that defendant's desire to waive counsel was "essentially conditioned by the defendant on his belief that if he represents himself, he will have greater access to trial preparation material." Because defendant was incorrect in his belief, the trial court felt that defendant's waiver of counsel was not a knowing and intelligent waiver.

The fact remains, however, that even after being told he would not have "managerial control" over the documents, defendant persisted in his right to represent himself. His persistence, whether due to stubbornness or obtuseness, was not a product of any mental incapacity to understand; whatever his reasons or motives, the decision to be his own attorney was defendant's personal decision to make and he made it knowingly and intelligently. Limited access to trial resources is inherent in a jailed defendant's self-representation, and, of course, the defendant should be so warned, as he was here. *Cf. State v. Seifert*, 423 N.W.2d 368, 372–73 (Minn.1988); *Faretta*, 422 U.S. at 835, 95 S.Ct. at 2541.

The trial court also noted that the case was complex, requiring experienced legal counsel, and that defendant "was not competent to conduct the sort of legal defense necessitated by this case." [4] It may well be- that a defendant's case can be better handled by an experienced lawyer than by the defendant himself, but that is not the point. "The defendant, and not his lawyer or the State, will bear the personal consequences of a conviction. It is the defendant, therefore, who must be free personally to decide whether in his particular case counsel is to his advantage." *Faretta*, 422 U.S. at 834, 95 S.Ct. at 2541.

■ Not only are the two reasons assigned by the trial court for denying waiver of counsel inapposite, but a review of the record can lead to no other conclusion than that defendant's waiver was knowingly and intelligently made.

Defendant is purportedly educated through at least 1 year of law school. He has demonstrated a general understanding of court protocol. His pro se motions and memoranda, by and large, are written coherently and reflect his ability to comprehend his rights. Numerous hearing transcripts reflect defendant's ability to make an intelligent oral argument. On one occasion, taking over for one of his earlier appointed counsel, he conducted a credible examination of a witness in a videotaped deposition. The Rule 20 examination supports the adequacy of defendant's intellectual capacity. Villaume thought defendant was capable of self-representation, a conclusion endorsed by defendant's first attorney. We conclude that defendant is "literate, competent, and understanding" and capable of waiving his right to counsel. *Faretta*, 422 U.S. at 835, 95 S.Ct. at 2541.

While the trial court did not make as extensive an inquiry into the waiver issue as might have been done, the record more than adequately shows defendant made an informed decision. Defendant was represented by attorney Villaume, who, it may be presumed, advised him. *See Jones, supra,* at 712. His numerous pro se legal arguments, written and oral, show he fully understood the gravity of the charges. His familiarity with *Faretta* suggests he was aware of possible dangers. In short, we believe defendant's demand for self-representation was "made with eyes open." *Faretta*, 422 U.S. at 835, 95 S.Ct. at 2541.

---

**4.** "This is an extremely complex case * * *. It also requires a well-thought-out, well-planned and well-executed trial strategy and the preparation for and making of timely and appropriate trial objections. * * * [T]he defendant herein is not competent to conduct the sort of legal defense necessitated by this case." Trial court's Memo to Order of August 17, 1988.

We might add that, as noted by the trial judge and attorney Villaume, defendant has shown no tendency to engage in disruptive misconduct which would justify termination of a right of self-representation. *See Faretta,* 422 U.S. at 834 n. 46, 95 S.Ct. at 2541 n. 46. The trial court does, of course, have the power to appoint standby counsel, even over defendant's objection. *Id.*

Unquestionably, defendant is manipulative and argumentative.[5] He persists in wandering into annoying irrelevancies. He says he would be better off with competent counsel (which, incidentally, is another indicia of his intelligence), but he is dissatisfied with anyone's competence except his own. We can appreciate the trial judge's concerns for defendant's interests. But, for better or worse, defendant wants to represent himself. *Faretta* was meant by the United States Supreme Court for just such people. We have no alternative but to reverse the judgment of conviction and grant defendant a new trial where he may represent himself.

## II.

On February 21, 1989, about a month before trial, defendant filed with the court administrator an affidavit of prejudice for the purpose of causing a new judge to be assigned. *See* Minn.Stat. § 542.16, subd. 1 (1988). On the day of the Rasmussen hearing, March 20, 1989, defendant objected to the court's "apparent decision not to honor this affidavit of prejudice." The judge then said he was denying the notice to remove because it was untimely. The recusal issue is troublesome but, as we assume a different judge will be assigned the retrial, we see no need to discuss the issue.

■ There is no merit to defendant's claim of a denial of a speedy trial. Twenty-five months elapsed from arrest to trial. At certain stages defendant asserted his right to a speedy trial, although on August 29, 1988 through March 21, 1989, he waived that right. Much of the delay was attributable to defendant and his frequent changing of defense counsel, requiring continuances of scheduled trial dates. Finally, defendant has not shown that the delay prejudiced his defense; if anything, it aided defense preparation. We conclude from our review of the record in light of *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), that defendant's speedy trial rights were not violated.

■ Based on the totality of the circumstances, the trial court found that Linda Winbush freely and voluntarily consented to a search of her house. We affirm that finding, which is amply sustained by the evidence. Winbush's later equivocation on whether she had voluntarily consented to the search appears to have been prompted by defendant's intervention. Finally, we agree with the trial court that the Hennepin County Attorney's office was not disqualified from prosecuting this case because it had hired a paralegal who had previously interviewed for a job with attorney Villaume. The trial court properly insulated this incident so that it had no effect on a fair trial. Other issues are without merit or moot.

Reversed and new trial granted.

YETKA, Justice (dissenting).

I dissent because I think the record clearly shows that the defendant's request to serve as his own counsel was equivocal. In *Faretta v. California,* the United States Supreme Court framed the constitutional question presented in these cases as "whether a State may constitutionally hale a person into its criminal courts and there force a lawyer upon him, even when he *insists that he wants to conduct his own defense." Faretta v. California,* 422 U.S. 806, 807, 95 S.Ct. 2525, 2527, 45 L.Ed.2d 562 (1975) (emphasis added). Under *Faretta,* the request must be clear and unequivo-

---

5. Since oral argument, defendant has filed a motion for leave to file a "Pro Se Post–Briefing Supplement," accompanied by the "Supplement." The motion is denied. Defendant's further motion to unseal certain in-camera hearing transcripts provided he first reads them is also denied. This court has, of course, reviewed the sealed transcripts, as it has a right and obligation to do.

cal. *Faretta*, 422 U.S. at 835, 95 S.Ct. at 2541.

The question for this court then becomes whether the facts of this case support a conclusion that the defendant's assertion of his right to self-representation was "clear and unequivocal." For purposes of this case, it is important to note that the *Faretta* Court distinguished between a request for self-representation and a request for co-counsel. *See Faretta*, 422 U.S. at 810 & n. 5, 95 S.Ct. at 2529 & n. 5. Although the defendant in the present case made several motions in connection with his right to self-representation, most of his requests were conditioned on a demand for a particular co-counsel or a similar arrangement whereby some sort of an assistant or "legal advisor" would be provided to him. Other requests were conditioned on being assured the same sort of access to documents, research facilities, and investigations that an ordinary attorney would have. Unlike Faretta, Richards never unconditionally asserted the right to represent himself.

At the August 16, 1988 hearing on this matter, the trial court repeatedly attempted to elicit from the defendant a simple declarative statement as to whether he was asking to be allowed to represent himself or for some sort of co-counsel/legal advisor arrangement. The defendant repeatedly refused to clarify his request. Finally, the court asked the defendant: "[W]hat is it that you want me to do here?" and the defendant replied: "At this point I don't know." This response is hardly a "clear and unequivocal" assertion of the right to self-representation as required by *Faretta*. On the contrary, it amounts to a revocation of the earlier compound assertions.

The record is replete with evidence of a defendant who has absolutely manipulated the system for years. He has exhausted two judges and four attorneys. His final request to serve as his own counsel was equivocal in the additional sense that he still maintained that he preferred a private attorney, but only if the attorney were acceptable to him. The fact is, however, that none of the attorneys he had worked with up to that point had been acceptable to him.

What Richards really wanted was to orchestrate the trial process, have an attorney whom he could use as an errand boy or puppet, and force the trial court into a Hobson's choice where either alternative would result in a claim of reversible error. It would not be difficult to imagine, had the trial judge permitted Richards to represent himself, his being here on appeal, claiming that he was denied effective assistance of counsel because he requested, but was not given co-counsel. Accordingly, I believe that the trial court properly rejected Richards' ambiguous demands and correctly appointed excellent and experienced trial counsel on his behalf. *See Tuitt v. Fair*, 822 F.2d 166, 174–77 (1st Cir.1987) (affirming trial court's denial of defendant's equivocal request to proceed pro se and a subsequent denial of petition for habeus corpus), *cert. denied*, 484 U.S. 945, 108 S.Ct. 333, 98 L.Ed.2d 360 (1987). For all of the above reasons, I would conclude that the defendant's right to self-representation was not properly asserted and, therefore, was not violated by the trial court's ruling.

Upon reaching the above conclusion, I must address the only other real issue in this case, namely, the refusal of the trial court judge to recuse himself on request. I would affirm the trial court on this issue for two reasons: First, the request for recusal was untimely. The defendant did not make the request until after there had been numerous pretrial proceedings and Judge Porter had been sitting on the case for almost a year. In light of this procedural history, it is obvious that the defendant was exploiting the system by use of this delay tactic. Second, the defendant has not preserved this issue for appeal. Richards' failure to seek a writ of prohibition justifies barring him from raising this issue on appeal. *State v. Cermak*, 350 N.W.2d 328, 331 (Minn.1984).

In summary, while granting a new trial makes some sense in cases where there is a need to correct procedural unfairness or deter future police or prosecutorial misconduct, such concerns are not present in this

case. I cannot join an opinion that would, without any legitimate reason, send a case back for trial that would needlessly consume scarce judicial resources and incur additional public expenses when exactly the same result is anticipated. I believe that a new trial in this case would not serve any useful purpose, therefore, I would affirm the conviction.

COYNE, Justice (dissenting).

I respectfully dissent.

I have no quarrel with *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), which recognizes that a criminal defendant has a constitutional right of self-representation at trial. Indeed, I note that this court has gone beyond *Faretta* and recognized a right of criminal defendants pursuant to the Minnesota Rules of Criminal Procedure to represent themselves on direct appeal. *State v. Seifert,* 423 N.W.2d 368, 370 (Minn.1988).

I also agree with the majority that if the defendant in this case was denied his right to represent himself at trial, then he is entitled to a new trial because, as the United States Supreme Court has said, deprivation of the right of self-representation at trial is not amenable to harmless error analysis. *McKaskle v. Wiggins,* 465 U.S. 168, 177 n. 8, 104 S.Ct. 944, 950 n. 8, 79 L.Ed.2d 122 (1984).

The decision for a trial court to make when a criminal defendant says he wants to represent himself is not always an easy decision nor one involving a mechanical application of the principles of invocation of the right of self-representation and waiver of the right to counsel. Even in a case in which the criminal defendant is acting in good faith, the trial court may find itself in a quandary in deciding whether the defendant really wants to represent himself and, if so, whether the defendant's waiver of his right to counsel is knowing and intelligent. As one court has put it, "The right to counsel is, in a sense, the paramount right; if wrongly denied, the defendant is likely to be more seriously injured than if denied his right to proceed pro se." *Tuitt v. Fair,* 822 F.2d 166, 177 (1st Cir.), *cert. denied,* 484 U.S. 945, 108 S.Ct. 333, 98 L.Ed.2d 360 (1987). While knowing this, the trial court also knows that if it erroneously denies the defendant the right to represent himself, the defendant may obtain a new trial automatically even if it is clear to the reviewing court that if the defendant had represented himself the jury would have had an easier time deciding to convict him.

Of course, not all defendants act in good faith. Although Rules of Criminal Procedure exist to insure that each criminal prosecution is both orderly and fair, some criminal defendants are expert at turning the process into a game, the aim of which is to create error. This problem is particularly acute in the area of self-representation, where a defendant, by making an equivocal request to proceed without counsel, can place the trial court in a position to be "whipsawed": if the trial court lets the defendant represent himself, the defendant can argue on appeal that he was deprived of his right to counsel, but if the trial court does not let the defendant represent himself, the defendant can claim he was deprived of his right to represent himself. *Meeks v. Craven,* 482 F.2d 465, 467–68 (9th Cir.1973).

In order to avoid giving criminal defendants a ready tool with which to upset adverse verdicts after trial, the courts require both an "unequivocal" demand by the defendant to proceed pro se and a knowing and voluntary waiver of the right to counsel. As stated by Justice Frankfurter:

> In reviewing criminal cases, it is particularly important for appellate courts to re-live the whole trial imaginatively and not to extract from episodes in isolation abstract questions of evidence and procedure. To turn a criminal appeal into a quest for error no more promotes the ends of justice than to acquiesce in low standards of criminal prosecution.

*Johnson v. United States,* 318 U.S. 189, 202, 63 S.Ct. 549, 555, 87 L.Ed. 704 (1943) (concurring opinion). Reliving the over two years of *pretrial* proceedings imaginatively supports, I believe, Justice Yetka's observation that Richards is a very clever manipulator and that "What Richards real-

ly wanted was to orchestrate the trial process, have an attorney whom he could use as an errand boy or puppet, and force the trial court into a Hobson's choice where either alternative would result in a claim of reversible error." *Accord Tuitt*, 822 F.2d at 174–77 (affirming trial court's denial of the defendant's equivocal request to represent himself). I also believe that the record supports the trial court's determination that Richards' purported waiver of his right to counsel was not knowing and intelligent. Accordingly, I would affirm the first-degree murder conviction.