STATE of Minnesota, Respondent,

v.

Carrie Lynn PARSON, Appellant.

No. C7–89–1853.

Court of Appeals of Minnesota.

June 26, 1990.

Review Denied July 31, 1990.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Alan Mitchell, St. Louis County Atty., Gordon P. Coldagelli, Asst. County Atty., Duluth, for respondent.

John M. Stuart, State Public Defender, Susan K. Maki, Asst. Public Defender, Minneapolis, for appellant.

Considered and decided by KLAPHAKE, P.J., and HUSPENI and RANDALL, JJ.

## OPINION

RANDALL, Judge.

Appellant Carrie Lynn Parson was charged with one count of sale of a controlled substance (marijuana) in violation of Minn.Stat. §§ 152.09, subd. 1(1) and 152.15, subd. 1(3) (1988). Appellant was found guilty by a jury and sentenced to a term of imprisonment of one year and one day. Execution of the sentence was stayed for a period of three years. Appellant was ordered to serve 12 months in jail as a condition of probation. Appellant now contends she was denied her right to counsel and improperly sentenced. We affirm the conviction, but modify appellant's sentence.

## FACTS

Appellant was contacted by an acquaintance and asked to obtain one-quarter ounce of marijuana on April 27, 1989. She agreed to do so. Her acquaintance turned out to be a police informant. Later that afternoon, the informant and Duluth Police Officer Kevin Bauer went to appellant's apartment to make the purchase. Appellant let the men into her apartment and sold them a bag of marijuana for $50. Subsequent laboratory tests revealed that the bag contained 4.2 grams of marijuana.

Based on these facts, a warrant for appellant's arrest was obtained and executed. Appellant was taken into custody at her apartment in Itasca County. The arresting officer allowed appellant to make a telephone call to her boyfriend to arrange for the care of her two children. According to the arresting officer's testimony, when the boyfriend arrived at the apartment, appellant told him she sold to a narcotics agent.

A public defender was appointed to represent appellant when she initially appeared in court. Appellant unequivocally refused the public defender's services, and after the trial court denied appellant's request to have her father[1] represent her, appellant exercised her right to represent herself. The trial court appointed a public defender as standby counsel. Appellant refused to utilize standby counsel and informed the trial court that she would have nothing to do with the public defender. The trial court subsequently excused the public defender from remaining in the courtroom, allowed him to go back to his office and return to his practice, but did inform appellant that the public defender was available for her to consult with upon request.[2] Appellant again stated that she did not want to deal with an attorney and conducted the entire trial on her own.[3]

A jury found appellant guilty, and on July 21, 1989, she was sentenced to one year and one day in prison. The trial court stayed execution of the sentence for three years and placed appellant on probation. As a condition of probation, the trial court ordered appellant to serve 12 months in the county jail.

---

1. Appellant's father is not an attorney.

2. We assume that upon a request by appellant to the court for assistance that the trial judge would have stopped the proceedings, taken a recess, and contacted the public defender at his office to come down to the court house.

3. The trial court did permit appellant's father to sit at the counsel table.

## ISSUES

1. Did the trial court err by allowing standby counsel to leave the courtroom during the trial?

2. Did the trial court abuse its discretion by ordering appellant to serve 12 months in jail as a condition of probation on a charge which called for a maximum of one year and one day in prison if the sentence had been executed?

## ANALYSIS

### I.

*Standby Counsel*

Appellant contends the trial court erred by allowing standby counsel to leave the courtroom during trial. She argues that for standby counsel to be effective, counsel must be physically present during trial. Otherwise, according to appellant, the purpose for which standby counsel is appointed—"to aid the accused if and when the accused requests help * * *" *Faretta v. California*, 422 U.S. 806, 834 n. 46, 95 S.Ct. 2525, 2541 n. 46, 45 L.Ed.2d 562 (1975)—would not be furthered. Therefore, she requests this court to reverse her conviction and order a new trial.

Minn.R.Crim.P. 5.02, subd. 1 requires trial courts to appoint counsel for indigent defendants in felony and gross misdemeanor cases. The comment to the rule states:

> Under Rule 5.02, subd. 1, counsel must be appointed for a defendant financially unable to afford counsel in a felony or gross misdemeanor case even if a defendant exercises his constitutional right under *Faretta v. California,* 422 U.S. 806 [95 S.Ct. 2525, 45 L.Ed.2d 562] (1975), to refuse the assistance of counsel and represent himself. *In such a situation the appointed counsel would remain available for assistance and consultation if requested by the defendant.*

(emphasis added). The language of this comment has been interpreted as imposing a duty upon trial courts to appoint counsel

to indigent defendants "even when the defendant indicates his desire to proceed pro se." *State v. Lande,* 376 N.W.2d 483, 485 (Minn.App.1985), *pet. for rev. denied* (Minn. Jan. 17, 1986).[4] In such a case, "the preferred practice is to have counsel in the back of the courtroom for consultation." *Id* at 485 n. 1.

 We hold that the trial court erred by allowing appointed counsel to leave the courtroom during appellant's trial. From a common sense standpoint, it would be virtually impossible for a standby counsel to provide assistance, much less effective assistance, to a criminal client when that counsel has not been physically present during the taking of the testimony and all the court proceedings that preceded the request. A lead (and here the only) attorney simply cannot be absent and be expected to come back in on short notice, pick up the thread of the state's case, pick up on all the subtle nuances that are apparent only to those actually in the courtroom during trial, read a cold transcript (assuming the doubtful proposition that a complete transcript to date can be had on short notice) and go on to do an effective job on a criminal case.

Pro se defendants can change their minds, and have an absolute right to do so. It can never be assumed that the emphatic denial of offered assistance, as we have here, is the pro se defendant's final word. When they do change their minds and request standby counsel to take over a defense or render some temporary assistance, the damage done by standby's previous absence is irreversible.

To give meaning to the constitutional requirement of effective assistance of counsel, we hold that in future cases, once the trial court makes the decision to appoint standby counsel, that standby counsel must be physically present in the courtroom from the time of appointment through all proceedings until the proceedings conclude. However, we make this ruling prospective because, based on the facts

---

**4.** We note that when a defendant is exercising his right to represent himself at a criminal trial the trial court has the authority to appoint a standby counsel, even over the objections of the defendant. *See State v. Richards,* 456 N.W.2d 260, 266 (Minn.1990).

of this case, the failure to have standby counsel physically present in the courtroom did not prejudice appellant, did not alter or influence the verdict in any way, and, although error, was error harmless beyond a reasonable doubt.[5]

Appellant concedes that at no time during trial did she ask for the assistance of her standby counsel. Thus, there was no occasion when standby counsel came into the trial unprepared. He simply never came into the trial. Appellant conducted the entire trial pursuant to her own firm and specific decision to do so. Appellant does not argue that she was denied access to standby counsel, does not claim she ever wanted him present, does not claim she was deterred from asking for him knowing there would be a delay before he could be located and come to the courthouse. If midway through the trial appellant had requested standby counsel, had he come in on short notice and, because of unfamiliarity with the case, proceeded to stumble through a direct examination, a cross-examination, evidence presentation, or a closing argument, the potential problem we address would have turned from potential to real. But, for this trial, appellant was granted access to a standby counsel and suffered no actual or even claimed prejudice by the standby's absence. Accordingly, on these facts, we conclude the failure to have standby counsel physically present through trial did not affect any rights of appellant, did not contribute to the verdict, and does not require reversal. *See State v.*

*Warndahl,* 436 N.W.2d 770, 776 (Minn. 1989).

## II.

*Sentence*

■ Appellant contends the trial court abused its discretion by ordering her to serve 12 months in jail as a condition of her probation. We agree. The supreme court recently stated,

the maximum amount of probationary jail time cannot exceed the maximum amount of time the defendant would be required to serve in prison if the sentence had been executed.

*State v. Gilbertson,* 455 N.W.2d 59, 59 (Minn.1990). Appellant's maximum sentence was one year and one day. The most time she could be required to serve had her sentence been executed is two-thirds or eight months. Even though appellant did not avail herself of her *Randolph* right[6] to have the sentence executed, the trial court abused its discretion by imposing a probationary jail term equal to the maximum guidelines sentence less one day. Therefore, guided by *Gilbertson,* we modify appellant's probationary jail term to eight months.

## DECISION

Once the trial court makes the determination that a pro se criminal defendant is entitled to the appointment of standby counsel, that counsel must be physically present in the courtroom and at in-chamber

---

5. The supreme court stated in *Richards* that the denial of a defendant's right to self-representation is not subject to harmless error analysis. *Richards,* 456 N.W.2d at 263. *Richards* does not govern our analysis because here appellant was granted her request to represent herself. We address only the procedure to be followed after a defendant exercises the right to self-representation and the trial court decides to appoint a standby counsel. We conclude that a harmless error analysis is appropriate here as appellant was granted what she wanted, and fortunately no trial problems involving the standby's absence arose.

6. The supreme court established the right of a criminal defendant to demand execution of a

sentence and refuse probation "if the conditions of probation make probation more onerous than prison * * *." *State v. Randolph,* 316 N.W.2d 508, 510 (Minn.1982). The legislature eliminated this right when an offender would serve less than nine months in a state institution. *See* Minn.Stat. § 609.135, subd. 7 (Supp. 1989). Because this statute only restricts the rights of defendants sentenced after August 1, 1989, *see State v. Samarzia,* 452 N.W.2d 727, 728 (Minn.App.1990), *pet. for rev. denied* (Minn. Apr. 25, 1990), appellant had the right to avail herself of *Randolph* and demand to have her sentence executed. But her failure to so do does not affect her right under *Gilbertson* to have her probationary jail time limited to two-thirds of the maximum sentence.

proceedings to reach the sixth amendment threshold of effective assistance of counsel.

Appellant's probationary jail term must be limited to two-thirds of the maximum sentence. Here, appellant's stayed sentence was 12 months and one day, and thus her jail term had to be capped at eight months. We so modify her sentence.

Affirmed as modified.